**STATE of Missouri, Respondent,**

v.

**Eddie Joe WRIGHT, Appellant.**

**No. 55350.**

Supreme Court of Missouri, Division No. 2.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Ronald M. Sokol, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

HENLEY, Judge.

This is an appeal from a judgment sentencing Eddie Joe Wright (hereinafter defendant) to imprisonment for a term of ten years on his conviction by a jury of robbery, first degree, by means of a dangerous and deadly weapon. Sections 560.120 and 560.135.[1]

The facts in support of the charge are brief and come from the state's witness, James J. Leary, night manager of the Market Basket Grocery Store, located at 3506 Troost, Kansas City, Missouri. Mr. Leary testified that on the night of September 30, 1968, between 9 and 9:30 o'clock, he was working at the store's check-out counter and had just closed the cash register drawer after checking the purchases of a customer when he turned to check the purchases of the last customer at the counter. The last "customer" was the defendant who was holding a loaded revolver pointed at Leary. Defendant ordered Leary to give him all the money from the cash register and, at defendant's direction, removed the drawer, placed it on the counter between them, and helped defendant put all the money, estimated at in excess of $450.00, in a paper sack. This accomplished, defendant ordered Leary to walk with him outside the store. Upon reaching the street edge of the sidewalk, defendant turned and ran. Mr. Leary returned immediately to the store, called the police, and reported the robbery. He described the robber to the police as being a Negro male between 30 and 40 years of age, approximately six feet four inches tall and weighing over 200 pounds, with "proc-

essed" hair, inset eyes and a goatee or chin whiskers. Mr. Leary further testified that the store was well-lighted, that defendant was facing him from across the counter only two or so feet away, that he got a good look at him then and during their walk to the street and that he is positive the man he identified in court is the man who robbed him.

Defendant assigns as error the court's overruling of his motion for judgment of acquittal. In this connection he asserts, first, that there is a fatal variance between the charge made in the information and the proof in that the information alleges that the money taken was the property of James J. Leary, whereas the evidence is that it was not Leary's money but was the money of the Market Basket, the property of someone else. In this same point he also contends that " * * * [t]he charges in this information will not protect * * * [him] against further prosecution for the same offense." Second, he asserts that the testimony of Leary " * * * was so inconsistent, improbable and irreconcilably conflicting as to be legally insubstantial, [and], [l]acking that evidence, the evidence was insufficient for conviction as a matter of law."

The allegations of the information, and the evidence as to ownership of the money, are as stated by defendant. However, the evidence is that the money was taken from Leary who was at the time the agent and employee of the owner and in charge thereof. Rule 26.04 provides that any variance between the allegation of the information and the evidence offered in proof thereof, as to the ownership of property described therein, shall not be deemed grounds for acquittal, unless it be found by the trial court that such variance is material to the merits of the case and prejudicial to the defendant.[2] This variance between the charge and the proof was

---

1. All references to sections are to RSMo 1969 and V.A.M.S.; references to rules are Rules of Supreme Court of Missouri and V.A.M.R.

2. See also § 546.080, RSMo 1969, V.A. M.S.

not found by the trial court to be material or prejudicial, and we do not so consider it. State v. Fitzsimmons, 338 Mo. 230, 89 S.W.2d 670, 672 [2]. The essence of the offense of robbery is the taking of the property of another from the person by violence or by fear; the ownership of the property taken is not material to and does not affect the offense. State v. Fitzsimmons, supra; State v. Pughe, Mo., 403 S.W.2d 635, 637 [1]; 77 C.J.S. Robbery § 44d, p. 483. Cf. State v. Andrews, Mo., 371 S.W.2d 324, 326 [2, 3]. The allegations and proof correspond as to the identity of the person from whose custody and control the property was taken and, in these circumstances, the variance as to ownership was not prejudicial to defendant. State v. Fitzsimmons, supra.

■ Defendant's assertion in this point. that the allegations of the information are not sufficient to protect him against further prosecution for the same offense is not asserted as a ground in his motion for new trial and, therefore, is not preserved for review. He does not directly attack the information as being insufficient to charge a crime. However, we have examined the information and find it to be sufficient. Furthermore, the charge as alleged in the information would protect him against a subsequent charge based on the same act. State v. Richardson, Mo., 460 S.W.2d 537. See also Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469.

■ Defendant's point that the testimony of Leary was so inconsistent, improbable and conflicting as to be without sufficient substance to support the conviction has no merit. It appears from the argument portion of his brief that his point is, in fact, a contention that this witness is not believable and, therefore, no weight should be given his testimony. The credibility of the witness and the weight and value to be given his testimony are matters within the province of the jury and are not for review on appeal. Moreover, we have reviewed the evidence and, in particular, the testimony of this, the only witness to testify as to the facts of the robbery, and find it to be precise, cogent, consistent and substantial. It is sufficient to support the conviction.

■ Defendant's next assignment is that the court erred in overruling his pretrial motion to suppress evidence of his identification by the witness Leary at a lineup and his in-court identification by this witness, because, he says, (1) he was denied the right to counsel at the lineup, and (2) his exhibition in the lineup with two other Negro males of dissimilar physical description was unnecessarily suggestive and conducive to irreparable mistaken identification and, therefore, denied him due process of law. The lineup was conducted without counsel present representing defendant. Two other Negro men were in the lineup with defendant, but neither had "processed" hair nor was quite as tall as defendant. In support of this point he cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

In *Wade* and *Gilbert* the Supreme Court of the United States held that a post-indictment pre-trial lineup is a critical prosecutive state at which the defendant is entitled to the aid of counsel and that an in-court identification by a witness to whom the accused was exhibited before trial in the absence of counsel must be excluded unless it can be established that such evidence had an independent origin or that its admission was harmless error. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. In *Gilbert* the court adopted a *per se* exclusionary rule as to testimony by a witness that he identified an accused at a lineup. The court said that such testimony " * * * is the direct result of the illegal lineup, 'come at by exploitation of [the primary] illegality' * * * " and " * * * [t]he State is therefore not entitled to an opportunity to

show that that testimony had an independent source." However, the court did soften the blow struck in *Gilbert* against the admission of what it says is relevant evidence; it held that Gilbert would not be entitled to a new trial of account of the admission of that evidence if the California Supreme Court is " 'able to declare a belief that it was harmless beyond a reasonable doubt,' Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705."

As to the first part of this point, that is, that the court should have suppressed the testimony of Leary that he identified defendant at a lineup, defendant's motion did not seek to suppress such evidence; it sought only to prevent the possible identification of defendant at the trial. Furthermore, at the trial, there was no objection by defendant to Leary's testimony that he had identified defendant at a lineup, nor was this part of the point assigned as error in the motion for new trial. As a matter of fact, defendant repeatedly made reference to this testimony in his cross-examination of Leary and thus himself enhanced " * * * the impact of [the witness'] in-court identification on the jury * * *." 388 U.S. at 273, 87 S.Ct. at 1957. This part of the point was not preserved for appellate review. State v. Brownridge, Mo., 459 S.W.2d 317, 320 [8]; State v. Franklin, Mo., 448 S.W.2d 583, 584 [2].

At the close of the hearing on the motion to suppress, the trial court determined that the in-court identification of defendant was not the result of the lineup procedures, but had an independent source. The evidence, narrated above, supports a finding that the in-court identification was based on Leary's observation of defendant during and immediately after the robbery rather than the allegedly suggestive procedures of the lineup. State v. Cannon, 465 S.W.2d 584; State v. Mentor, Mo., 433 S.W.2d 816.

Defendant's next point is that he should be discharged, because, he says, he was denied a speedy trial as required by §§ 545.890 and 545.920 and as guaranteed by Article I, § 18(a), Constitution of Missouri, V.A.M.S., and the speedy trial clause of the Sixth Amendment to the Constitution of the United States. His argument of the point is limited to an assertion that the statutes required that he be discharged because he was not brought to trial before the end of the third term after the information was filed. The information charging him with armed robbery was filed in the Circuit Count of Jackson County on October 23, 1968, during the September 1968 Term. Counsel was appointed to represent him the next day. His trial began September 22, 1969, during the September 1969 Term. He was in custody on this charge during the interim. Jackson County has five terms, beginning on the second Mondays in January, March, May, September and November. Four terms elapsed after the term at which the information was filed before he was brought to trial; the November 1968 Term and the January, March and May 1969 Terms. Defendant took no action at any time to secure a trial until he filed a motion for discharge under the statutes. His motion for discharge was filed July 29, 1969, at the May 1969 Term, was heard and overruled on September 22, 1969. The court did not err in overruling the motion; defendant is not entitled to discharge. In State v. Harper, (handed down December 13, 1971), 473 S.W.2d 419, this court, en banc, said: " * * * a defendant's failure to take affirmative action seeking a speedy trial constitutes a waiver of that right." Defendant took no action seeking a trial until midsummer, late in the May 1969 Term, and he was tried at the next term. The Court held in the Harper case " * * * that a defendant is not entitled to be released under the statutes in question (assuming the statutory exceptions are not applicable) simply because the required number of terms have elapsed. In addition to that he must show that he has demanded a trial, and that such request was made without success for a reasonable

length of time before his right to release has been asserted."

■ Defendant moved to discharge the panel of jurors from which the trial jury was to be selected, stating as grounds that § 22(b), Article I, Constitution of Missouri, which requires the court to excuse from jury service any woman who requests exemption, is unconstitutional in that it violates his rights to an impartial jury drawn from a fair cross-section of the community and denies him due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. The court overruled this motion and he now asserts, for the same reasons, that the court erred in overruling this challenge to the panel. The same question was presented recently in State v. Parker, Mo., 462 S.W.2d 737, 739 [2] and State v. Davis, Mo., 462 S.W.2d 798, 800 [1]. The court held that this section of the Missouri Constitution does not infringe upon any right protected by the federal Constitution. See also: Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed. 2d 118. These cases decide the question.

■ Defendant contends he was denied a fair trial guaranteed by the state and federal Constitutions in that the state, after demand, withheld information and evidence favorable to his defense. The defense was alibi; that he was in Jefferson City, Missouri, at the time of the robbery. During a pre-trial conference, counsel for the defendant asked counsel for the state whether the state had made an investigation of the alibi defense. Counsel for the state replied that the state had made an investigation and that the results of its investigation did not support the alibi. Jefferson City area residents (part of whom were interviewed by representatives of the state during the course of its investigation of the alibi) were called as witnesses by the defendant, but none of them supported his alibi. Defendant does not specifically refer to any information relative to alibi

withheld from him by the state which was favorable to his defense, and the record is barren of any hint that any exists.

In connection with this point defendant also asserts that one of the police reports seen by his counsel before trial described him as having a mustache, instead of a goatee, and that in failing to furnish this to him the state withheld information favorable to his defense. He contends that possession of this report would have been of great value to him in impeaching the state's witness, Leary. During a conference a few days before the case went to trial, the state promised to produce this report, if it existed. At that time defendant's counsel obviously was not certain about the exact description of defendant contained in the report. He said the description is " * * * negro male, age thirty to thirty-five, heighth—six foot three or four inches, with black processed hair and a mustache. If I remember correctly the terminology was a thin mustache, weight-two hundred pounds. If I remember correctly, that document also showed in it the scene was processed for fingerprints and that there were none found. I may be mistaken." The report was not produced when the trial began four days later and, so far as the record discloses, no mention was made of it by the court or counsel until the end of the trial. Apparently, a report so describing defendant did not exist or had been misplaced or lost. *If,* however, such report did in fact exist, we fail to see how its absence materially affected the defense. The record demonstrates that counsel for defendant was, without the report, able to cross-examine Leary thoroughly regarding the description of defendant he gave to the police and nothing was asked about whether he described defendant as having a mustache. The point is without substance and is overruled.

As another part of this point, defendant contends that another police report, defendant's exhibit "k", was not delivered to him in time for its use in impeaching the

witness, Leary. The report contains a statement that defendant " * * * was the last person in the store * * *." On cross-examination by defendant, Leary stated that there were other customers in the store but none in the immediate vicinity of the check-out stand and that he so informed the police. Again, the record demonstrates that defendant was not prejudiced by the fact he did not have the use of this report during cross-examination. Counsel for defendant had seen the police file before trial and with knowledge he gained there was able to cross-examine Leary thoroughly about the information he had given the police. The mere fact that the physical report was not in his hands at the time is of no consequence and could not have resulted in any prejudice to defendant.

Defendant's last point is that the court erred in overruling his objections to portions of the opening and closing argument by counsel for the state as being misquotations of the evidence. He asserts that there were four misquotations of evidence. One alleged misquotation involved the defendant's height, i. e., whether he was 6′4″ or 6′7″ tall; three involved the alibi defense. To relate the argument and the evidence to which defendant refers would unnecessarily lengthen this opinion and serve no purpose. We have reviewed the argument and evidence referred to and have the view that while statements of fact made by counsel for the state were erroneous in that they were not exact quotations of what a witness said, they were fair and reasonable paraphrases of the testimony; the inferences drawn were deducible from the evidence. There was no prejudice to defendant and the court did not abuse its discretion in overruling the objections. State v. Coleman, Mo., 441 S.W.2d 46, 53–54.

The judgment is affirmed.

All of the Judges concur.