**STATE of Missouri, Respondent,**

v.

**Billy Taylor STRONG, Appellant.**

No. 56609.

Supreme Court of Missouri,
Division No. 2.

Sept. 25, 1972.

John C. Danforth, Atty. Gen., Neil Mac-Farlane, Asst. Atty. Gen., Jefferson City, for respondent.

John P. Beihl, Robert B. Randolph, St. Joseph, for appellant.

WILLIAM H. BILLINGS, Special Judge.

Billy Taylor Strong was convicted by a jury of the first degree murder of Robert Cordonier on September 23, 1969, in St. Joseph, Missouri, and sentenced to life imprisonment. We affirm.

The day before the killing the defendant purchased a .22 caliber long rifle pistol, serial No. 490910 from John Westbrook, a clerk at the Dave Cook Sporting Goods store located in Denver, Colorado, for $25. A record of the transaction was made at the time and defendant produced his Colorado driver's license, which contained his photograph, at the time of the purchase for purpose of identification. Defendant signed the purchase form in the clerk's presence and at the trial the clerk identified the defendant as the purchaser of the pistol. Clerk Westbrook further identified the pistol found near the scene of the slaying as the one he sold defendant and produced the purchase form signed by defendant.

The following day, September 23, bartender John O'Brien of Tom's Tavern in St. Joseph saw the defendant in the tavern on three occasions between 4 o'clock p.m. and 6:30 o'clock p.m. On the first occasion the bartender overheard the defendant talking to a third person about Denver, Colorado. On the second and third occasions defendant was with Chuck Warner and the bartender served them drinks.

Warner, also charged with the murder of Cordonier, knew the defendant but had not seen him for several years until he met him near Tom's Tavern during the late afternoon of September 23. Defendant told Warner he needed a car in order to commit a robbery and the two men discussed stealing a car. Defendant displayed a .22 caliber pistol and a box of shells to Warner and told him he wanted Warner to drive the car in a "bank job" and he (the defendant) would "handle the gun." They left Tom's Tavern and as they approached Tura's Lounge on Sixth Street they saw a white colored car, later identified as a 1964 Dodge Dart sedan owned by Cordonier, on a parking lot across from Tura's. Following a drink in this tavern the two men then walked outside the establishment and defendant told Warner he was going to get the white car. They thought someone was in the car and Warner told the defendant he did not want anyone to get hurt. Defendant stated he would stop anybody that got in his way. Defendant and Warner crossed the street and approached the white vehicle, with defendant going to the driver's side of the automobile and Warner going to the passenger's side of the front seat. The door next to Warner was locked but he could make out a form in the front seat of the car and could hear the car radio. Warner kept looking toward Sixth Street and in about a minute or a minute and a half he heard a shot. Defendant came around the rear of the car with the pistol in his hand and said: "Come on, let's get out of here." As the two ran from the scene, defendant threw the pistol into a doorway of a nearby building. The pair then separated.

As Frank Harris was leaving Tura's about 6:30 o'clock p.m. he heard something like a firecracker or shot from near the white car on the parking lot. Sheldon Smith was just entering Tura's and he and Harris saw two men near the white car. When Harris and Smith started towards the car the two men ran from the parking lot. Harris recognized Warner but not the defendant. Harris and Smith saw Cordonier lying on the ground near the driver's side of the white car. Harris gave chase and went north on Sixth Street and seized Warner and held him until police officers arrived.

Officers arrived shortly thereafter and took photographs and measurements of the body of Cordonier and of the scene. The dead man was lying on the parking lot near the rear wheel of his automobile. The driver's door was open and the car ra-

dio was playing. The officers found the .22 caliber pistol in the vestibule of a nearby building. The weapon contained five unfired Super X cartridges and one fired Super X shell. At a different location but near the scene, a box of Super X .22 caliber long rifle ammunition was found. Six of the original fifty cartridges were missing. Ballistics tests of the gun and cartridges and comparison examinations of the spent cartridge and slivers of a bullet from the victim's brain brought forth the opinion that the pistol fired the fatal shot.

An autopsy of the victim revealed a "gun sight" wound to the face, "defense-type" lacerations on the back of both hands, a laceration and swelling of one knee, and a bullet hole which entered the rear of the head with a partial exit wound in the left top area of the skull. Bullet fragments were found in the brain and the skull was fractured.

Defendant offered no evidence and unsuccessfully moved for a judgment of acquittal at the close of the state's evidence

■ Defendant first contends that the magistrate court lost jurisdiction because of seven continuances from November 28, 1969, to April 6, 1970. While it is true our Rule 23.06, V.A.M.R., provides continuation of a preliminary hearing is not to exceed ten days at one time, the failure to adhere to this rule did not oust the magistrate court of its jurisdiction. In State v. Caffey, Mo., 438 S.W.2d 167, we held that a continuation of a preliminary hearing over an eleven month period was a procedural irregularity and did not divest the magistrate court or the circuit court of jurisdiction over the subject matter. We also note that it was admitted that several of the continuances in magistrate court were with the knowledge and consent of defendant.

■ Defendant further claims that the elapse of eleven months between his arrest and the trial deprived him of his constitutional right to a speedy trial and a

violation of due process. In Caffey, supra, and more recently in State v. Roach, Mo., 480 S.W.2d 841, the rule is set forth that *the right to a speedy trial does not begin until the information is filed.* (Our emphasis.) Here, the information was filed five months before the trial and the passage of substantial periods of time between arrest and trial does not of itself violate the constitutional guarantee of a speedy trial. State v. Quinn, Mo., 405 S.W.2d 895; Hodges v. United States, 408 F.2d 543 (8th Cir.).

■ Defendant also argues that three terms of court had expired before his trial and under § 545.890, RSMo 1969, V.A.M.S., he was entitled to be discharged. In order to seek the benefit of this statute defendant starts the time running as of November 19, 1969, when he first appeared in magistrate court for what he designates his "arraignment." Section 545.890 requires in some circumstances the discharge of a person indicted and committed to prison if he is not brought to trial within two terms after the indictment is found. The Buchanan County Circuit Court has three terms of court (the first Mondays in January, May and October, § 478.220, RSMo 1969, V.A.M.S.), and therefore § 545.920 applies and extends the time for trial to three terms. However, defendant would not have been entitled to be discharged under either statute. His position as to this contention is thwarted by the plain language of the statutes, which in this case became applicable on May 4, 1970, when the information was filed, and not September of 1969 when he was arrested or in November of 1969 when he first appeared in magistrate court. The information being filed in the May term of 1970 this term would be excluded in applying the statute. Trial of defendant occurred in the next following (October) term. Defendant is not entitled to a statutory discharge. State v. Roach, 480 S.W.2d 841; State v. Morton, Mo., 444 S.W.2d 420; State v. Harper, Mo., 473 S.W.2d 419.

■ In his brief herein defendant complains that his cross-examination of Warner was unduly restricted by the trial judge and this constituted a deprivation of his constitutional right of confrontation. Defendant states that the trial judge refused to allow his counsel to cross-examine Warner as to what this witness first told police concerning defendant's participation in the crime. We have reviewed the cross-examination of witness Warner and find this assignment of error to be without merit. In the twenty-three transcript pages of cross-examination of Warner the only question that was asked of the witness concerning this matter was as follows:

"Q. When did you first tell the police that Billy Strong was supposed to have been with you that night?

"A. The following morning."

No objections were made by the state, defendant did not pursue this line of questioning, and the trial court made no ruling on the matter.

Defendant argues his motion for a judgment of acquittal should have been sustained because of insufficient evidence to support the charge and verdict against him. In support of this argument defendant attacks the testimony of Warner as being so contradictory as to be not worthy of belief and says there was a complete absence of evidence, direct or circumstantial, that he (defendant) was on the parking lot or anywhere near the Cordonier vehicle when the crime occurred.

■ In testing the sufficiency of evidence in a criminal prosecution by a motion for a judgment of acquittal, the facts and evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. State v. McClinton, Mo., 418 S.W.2d 55; State v. Burrage, Mo., 418 S.W.2d 101.

Defendant's argument overlooks and ignores the uncontradicted evidence that he purchased the murder weapon the day before the killing; that he and Warner were seen together near the scene of the killing shortly before the crime; that he showed the pistol and ammunition to Warner and enlisted the latter's assistance to steal a car and participate in a robbery; that he and Warner approached the Cordonier automobile with defendant going to the driver's side and shortly thereafter Warner heard a shot from that side of the vehicle; that Cordonier was found near the door on the driver's side; that defendant came around the rear of the car with the pistol in his hand and said "come on, let's get out of here"; that as they ran from the scene defendant threw the pistol into a doorway.

■ The foregoing was sufficient substantial evidence to submit the case to the jury and there was no error in overruling defendant's motion for judgment of acquittal. We do not weigh the evidence to determine whether the charge has been proven beyond a reasonable doubt; that is a function of the jury. State v. Crawley, Mo., 478 S.W.2d 344; State v. Odom, Mo., 353 S.W.2d 708. The scope of our review extends only to a determination of whether there is sufficient substantial evidence to support the verdict and we so find. Crawley, supra. The fact that Warner was an admitted accomplice does not alter this determination since we have consistently ruled one can be convicted by the uncorroborated testimony of an accomplice. State v. Harris, Mo., 295 S.W.2d 94; State v. Emrich, Mo., 250 S.W.2d 718.

■ Defendant assigns as error the admission of three photographs of the deceased on the parking lot near the automobile and another close-up view of the head wounds taken at a funeral home. We have viewed these exhibits and contrary to defendant's assertion find that the photographs had probative value and were not inflammatory nor of a gruesome nature. The admission of such photographs is

within the discretion of the trial court. State v. Hendrix, Mo., 454 S.W.2d 40. The exhibits here showed the position of the victim in relation to his vehicle and the close-up picture demonstrated the nature and extent of the wounds to the victim's face and head. In State v. Tyson, Mo., 258 S.W.2d 651, we held (l.c. 654): "It is not a valid objection that witnesses have testified to matters shown by photographs because pictures give a much clearer impression of many things than any oral description and that is the reason for using them." And in State v. Moore, Mo., 303 S.W.2d 60, we recognized the admissibility of such photographs if they tended to "throw any relevant light upon a material matter at issue." Also see State v. Brown, Mo., 312 S.W.2d 818, and State v. Perkins, Mo., 382 S.W.2d 701.

Lastly, defendant contends error was committed by the reception into evidence of the murder weapon, a sealed envelope containing the five live cartridges and empty shell casing found in the pistol, and a vial containing bullet fragments found in the victim's head, because there was a break in the chain of possession of these exhibits. In support of this assignment defendant cites State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, State v. Anderson, Mo., 384 S.W.2d 591, and Bean v. Riddle, Mo., 423 S.W.2d 709. In Shawley this court ruled that where the bullet received in evidence was positively identified as being the bullet removed from the victim, chain of custody proof was not required and rejected defendant's contention of insufficient identification and failure to show it was in the same condition as when first obtained. Bean v. Riddle outlines the requirements for introducing a blood sample in a civil case and is not applicable. Anderson involved identification of a blood sample in a criminal case.

In State v. Coleman, Mo., 441 S.W.2d 46 (l.c. 51), we held: "The requirement of proof of a chain of custody is not applicable when the objects are positively identified, and the objects themselves, rather than their condition, are the significant factor." Here, the pistol purchased by the defendant and used to shoot the victim, was found near the scene of the crime and Chief of Detectives Schott of the St. Joseph Police Department took possession of the weapon. He and Lieutenant Evans initialed it and recorded the serial number. He tagged the gun and witnessed it being packed for shipment to the Missouri Highway Patrol Laboratory. At the trial he and Lieutenant Evans made positive identification of Exhibit 11 as being the same gun. Lieutenant Miller of the Missouri Highway Patrol testified he received the gun from Captain Forbes of the St. Joseph Police Department and the serial number he recorded was the same as that recorded by Chief Schott. It was Lieutenant Miller's opinion, as a result of ballistic tests he conducted, that the gun had been used to fire the fatal shot.

Exhibit 12 consisted of an envelope containing the five live cartridges and spent shell casing Chief Schott had removed from the murder weapon. Chief Schott identified the envelope as being the one into which he had placed the five live and one fired cartridge and then the envelope was sealed. Lieutenant Miller identified the exhibit as being the same he had received from Officer Forbes.

The third exhibit complained of consisted of a small vial containing three fragments of a bullet removed from the victim's head by Doctor McPhee during the autopsy. The doctor delivered the vial to Lieutenant Nash of the St. Joseph Police Department who sealed and labeled the vial. Both the doctor and officer identified the vial received in evidence as being the same vial and the doctor identified the fragments as being those he removed during the cranial autopsy. Lieutenant Miller received the sealed vial from Officer Forbes and conducted tests of the bullet fragments.

We find no merit in defendant's objection. The pistol and cartridges were posi-

tively identified by the officers who had first taken possession of them. The only chain of custody necessary in the instant case was to prove the transfer of the vial containing the bullet fragments from Doctor McPhee to Lieutenant Nash. The doctor and officer proved that chain of custody and the doctor made positive identification of the fragments. The exhibits were properly admitted. State v. Coleman, supra; State v. Sprout, Mo., 365 S.W.2d 572; State v. Shawley, supra.

The information is sufficient in form and substance. The verdict is in proper form and responsive to the information and issues submitted. Allocution was granted and the sentence and judgment are proper and responsive to the verdict.

The judgment is affirmed.

HENLEY, Acting P. J., DONNELLY, J., and SMITH, Special Judge, concur.

MORGAN, P. J., not sitting.