**STATE of Missouri, Respondent,**

v.

**Charles Ray KELLICK, Appellant.**

**No. 9719.**

Missouri Court of Appeals,
Springfield District.

March 24, 1975.

Motion for Rehearing or to Transfer to Supreme Court Denied April 3, 1975.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for respondent.

William S. Rader, Rader, Smith & Calvin, Cape Girardeau, for appellant.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

BILLINGS Chief Judge.

Charles Ray Kellick was convicted by a Wayne County jury of second degree burglary and stealing [§§ 560.045, 560.156, RSMo 1969, V.A.M.S.]. The jury assessed his punishment at five years imprisonment on each charge, and the trial judge ordered the sentences served consecutively. We affirm.

■ Defendant's sole point in this appeal is directed to the sufficiency of the evidence to support his conviction. In our appellate resolution of this issue, the facts and evidence and favorable inferences therefrom supporting the convictions are to be considered, and evidence and inferences to the contrary disregarded. State v. Strong, 484 S.W.2d 657 (Mo.1972); State v. Knighton, 518 S.W.2d 674 (Mo.App. 1975). Conflicts in the evidence and the determination of the credibility of witnesses and the weight to be given their testimony are within the province of the jury. So it is with respect to the decision of whether or not the defendant's guilt has been proven beyond a reasonable doubt. Such matters are beyond our scope of review. State v. Strong, supra; State v. Sherrill, 496 S.W.2d 321 (Mo.App.1973).

On the night of October 26, 1972, Charles Gillum observed defendant's pickup truck turn around in the driveway of the Gillum house which is located on Highway Z in Wayne County, Missouri. Believing that the defendant might be "spotlighting" cows Gillum got into his car and followed the defendant's truck south on Highway Z for about two miles. At this time, the bed of defendant's truck was empty. Gillum then passed the defendant who was driving at a speed of 20 to 25 miles per hour and proceeded south an additional three or four miles to the intersection of Highways D and Z. After waiting ten or fifteen minutes without seeing the defendant's truck, Gillum turned around and began driving north on Highway Z back toward his home. As he neared a house owned by Ray Patterson, Gillum turned off his headlights and saw the defendant's truck pull in behind the house.

The Patterson house sits about one hundred yards west of Highway Z and thirty feet south of a one-lane county road which intersects Highway Z about one mile south of Gillum's home. A driveway which is covered with crushed rock leads from the county road to a two-car garage on the north end of the house. The entrances to the garage face east, away from Highway Z, and there were no garage doors. The house was unoccupied on the night in question but was used for storage. Among the articles stored in the house were a large couch, a love seat, a recliner and two chairs belonging to the owner's son Eddie Patterson. All this furniture was covered in black "Naugahyde."

After he observed defendant's truck pull in behind the Patterson house, Gillum drove to his mother's house which is located "just above" his own home and asked her to call Charles Rainwater, Ray Patterson's stepson, who had some farming supplies and seed stored in the house. When Gillum returned to the intersection of Highway Z and the county road to wait for Rainwater, he observed a light moving about in the Patterson house.

Rainwater arrived about ten or fifteen minutes after receiving Gillum's call, and the two men drove down the road to the Patterson house in Rainwater's pickup truck. As they pulled into the Patterson driveway, defendant's truck which was backed up to within a few inches of the south garage entrance "took off real fast . . . . spinning gravel." Rainwater

rammed his truck into the side of defendant's truck forcing it into a ditch along the south side of the county road. The impact knocked a large couch out of the bed of defendant's truck, and Gillum and Rainwater saw additional pieces of black furniture still loaded on the truck. After his truck came to rest in the ditch, defendant got out and ran up to Rainwater's truck. He asked what Rainwater was trying to do, kill him, and stated he was just out looking for a coon hound he had lost the night before. Rainwater replied that he thought defendant was trying to steal the furniture.

Rainwater and Gillum then drove to the home of Gillum's mother where they called the Highway Patrol at Poplar Bluff. Gillum and Rainwater returned to the intersection of Highway Z and the county road, blocked the county road with Rainwater's truck, and sat in Gillum's car waiting for the arrival of a state trooper. While waiting, Gillum and Rainwater heard defendant calling his dog from a field near the Patterson house and along Highway Z.

Trooper Charles Powers arrived and took him into custody.

Defendant's truck was still in the ditch but its bed was empty. All the furniture Eddie Patterson had stored in the house was found in the south part of the garage. Some of the furniture had mud splatters and grass on it, and a leg of the large couch was broken off. At least one footprint which appeared to match the pattern of the composition soles on defendant's boots was found inside the garage. A small pane of glass on the door leading from the garage into the family room of the house had been broken from the outside making it possible for a person to reach in and unlock the "twist-type" door lock. Trooper Powers found an identification tag off one of the chairs in the yard.

■ In support of his contention the defendant argues that the testimony of state's witnesses contained "discrepancies and inconsistencies"; that he did not hide; and that an insufficient investigation was conducted by officers. While these matters are proper for the jury to consider in determining the guilt or innocence of a defendant, they are not cognizable on appeal. State v. Wright, 476 S.W.2d 581 (Mo. 1972); State v. Davis, 497 S.W.2d 204 (Mo.App.1973). Our review is limited to determining whether there is substantial evidence to support the jury's verdicts. State v. Eaton, 504 S.W.2d 12 (Mo.1973). And, substantial evidence is evidence from which the triers of fact, the jury, could find the issues in harmony therewith. State v. Taylor, 445 S.W.2d 282 (Mo. 1969).

■ We have no difficulty in concluding there was substantial evidence to support the jury's guilty verdicts in this case. The defendant was seen driving his empty truck behind the Patterson house. A few minutes later a light was observed moving through the interior of the dwelling. Shortly thereafter the defendant's flight from the scene was thwarted by his truck, loaded with furniture that had been stored in the house, being rammed. A footprint left by a boot similar to those worn by the defendant was in the garage. Glass from the door between the garage and house had been broken, permitting access to the inner lock. Mud and debris on the furniture indicated the items had been removed from the house—including the couch that was seen falling from the defendant's truck when it was rammed. We hold there was an abundance of evidence from which the jury could have concluded the defendant broke into the house and stole the furniture therefrom.

■ We also note that an inference of guilt is permissible from the possession of property recently stolen in a burglary, and the inference exists both as to the burglary and the stealing. Such an inference is a sufficient basis upon which to submit the case to the jury and support a conviction. State v. Clark, 438 S.W.2d 277 (Mo.1969).

Here, the defendant was seen driving away from the house in possession of the stolen furniture. "Thus, it was shown that appellant not only was present at the scene with opportunity to commit the crime of burglary and stealing, but he was also seen leaving the scene with stolen property, facts and circumstances which not only prove appellant's guilt but are also inconsistent with his innocence." State v. Matha, 446 S.W.2d 829, 831 (Mo.1969).

The jury was free to accept or reject the defendant's lost coon hound version of his activities at the Patterson house and obviously concluded, in the vernacular of Wayne County, that "old dog won't hunt."

The information is sufficient and the verdicts responsive to the issues tried and submitted. The punishment assessed is within the statutory range. Allocution was granted and judgment and sentence lawfully imposed.

Judgment affirmed.

All concur.