**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Marvin CLAY, Defendant-Appellant.**

**No. WD32591.**

Missouri Court of Appeals,
Western District.

Dec. 15, 1981.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled
and Denied Jan. 19, 1982.

David M. Strauss, Public Defender, Columbia, for defendant-appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

PER CURIAM:

Marvin Clay appeals from a conviction and jury-imposed sentence of five years for second degree burglary, a class C felony, under §§ 569.170, 558.011.1(3), 560.011 RSMo 1978.

The defendant asserts by a single point that the evidence is insufficient to sustain the conviction.

At approximately 4 a.m. on October 9, 1980, the police received word that an alarm

had sounded at Maxi's disco, indicating that someone either had entered or left the building. An officer, Crane, arrived at Maxi's approximately one minute later. As he approached Maxi's from the alley leading to the rear entrance, he saw a man kneel in front of a red pickup approximately 30 feet away. He described the man as a black male, approximately six feet tall, wearing a loud blue and red checked flannel shirt, blue jeans and a black baseball cap. He alighted from his patrol car, the man got up, walked toward and entered the back door of The Bakery, a donut shop adjacent to Maxi's. As the officer started to follow, he noticed three money bags lying where he had observed the man kneeling. One of the bags was empty, but the other two contained money. The officer grabbed the money bags, locked them in his patrol car and continued his pursuit of the man. He entered The Bakery from the rear door and asked Judy Moore, an employee, about the suspect. At trial, Moore testified that the suspect went out the front door of The Bakery and across Broadway, heading northwesterly. She described the man as "about five foot ten or eleven, medium build, black, had an afro-type hairdo, wearing a black cap and red plaid flannel shirt, and bluejeans." However, neither she nor Crane could make a positive in-court identification of the defendant.

Officer Cannady also answered the Sonitrol alarm at Maxi's within one minute. He parked his patrol car in front of the premises, "just a little catty-corner across the street from it." As he advanced toward the front door of Maxi's, he observed "a black male, wearing a red-type plad [sic] shirt, about six foot, not too heavy, about 155, 60 pounds" come out of The Bakery. He met Crane at the front door of The Bakery. Crane told Cannady that the suspect had come out of The Bakery's front door. Cannady realized that the man he had seen 40 or 45 seconds earlier was the only person to emerge from The Bakery door and he commenced a foot search for the suspect. He found the defendant "hiding back in the cubby hole area" of a near-by Standard Station. The defendant was sitting on a chair in the dark and was bent over "kind of like that, you know, hiding." Cannady testified that the defendant told him he was drunk and had been sleeping in the partitioned area behind the service station. Cannady conducted a pat search of the defendant and found a pair of blue channel lock pliers in his back pocket. He then arrested the defendant. Cannady positively identified the defendant as the person he saw walking out of The Bakery.

Subsequent to the defendant's arrest, another officer, Lake, transported Clay to jail. Prior to placing Clay in the holding cell, Lake searched him and discovered between $160 and $170 in denominations of ten, twenty, and one dollar bills stuffed into defendant's front pockets.

When the manager arrived at Maxi's, he found the door to the liquor storeroom broken and three money bags missing. At trial, the manager identified the recovered channel locks and money bags. He testified that when he left Maxi's earlier that evening, only two of the bags had contained money. One or two months prior to the break-in, Maxi's had employed Clay for two to three weeks to help insulate the ceiling.

Marvin Clay took the stand on his own behalf and offered evidence by way of alibi and in explanation of his presence at the Standard station. He also sought to explain the possession of the money and pliers.

In reviewing the sufficiency of the state's case, this court accepts as true all evidence in the record which tends to support the jury's finding of the defendant's guilt, together with all favorable inferences which reasonably can be drawn therefrom. Contradictory evidence and inferences must be disgarded. *State v. Brueckner*, 617 S.W.2d 405, 410 (Mo.App.1981); *State v. Puckett*, 611 S.W.2d 242, 244 (Mo.App.1980); *State v. Shaw*, 602 S.W.2d 17, 19 (Mo.App.1980). If the state makes a submissible case, the truth of the testimony and the reasonableness of the inferences to be drawn are exclusively for the jury. *State v. Allen*, 555 S.W.2d 36, 37 (Mo.App.1977).

This court will not weigh the evidence or judge the credibility of the witnesses. It determines only if there is substantial evidence to support the jury's verdict. *State v. Williams*, 600 S.W.2d 120, 122 (Mo.App. 1980); *State v. Kellick*, 521 S.W.2d 166, 168 (Mo.App.1975). Substantial evidence means evidence from which the trier of fact reasonably could find the issue in harmony therewith. *City of Kansas City v. Oxley*, 579 S.W.2d 113, 115 (Mo.banc 1979); *State v. Kellick, supra* at 168; *State v. Scaturro*, 509 S.W.2d 491, 492 (Mo.App.1974).

Presence at the scene of a crime is a circumstance which may be considered with other circumstances to create an inference of guilt. *State v. Puckett, supra* at 245. Unexplained possession of stolen property is a circumstance from which guilt may be inferred as a matter of fact. *State v. Cobb*, 444 S.W.2d 408, 414 (Mo.banc 1969). The requirement that the possession of the stolen goods be unexplained does not mean that the defendant proffers no explanation of his possession. It simply means that any explanation of possession of recently stolen property is a question of fact for the jury. "[I]f the jury does not believe the explanation offered, the accused's possession stands as though 'unexplained.'" *State v. McIntosh*, 559 S.W.2d 606, 609 (Mo.App.1977).

The subsequent furtive nature of the defendant's actions similarly could have led the jury to infer his guilt. *State v. Riley*, 536 S.W.2d 501, 504 (Mo.App.1976); *State v. Lenza*, 582 S.W.2d 703, 710 (Mo.App.1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980).

Considered in the light of these principles, the proof in the instant case was sufficient to permit the jury to draw the inference of defendant's guilt.

Judgment of conviction affirmed.