STATE of Missouri, Respondent,

v.

John L. MONDAINE, Appellant.

No. WD 33666.

Missouri Court of Appeals,
Western District.

April 12, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 2, 1983.

Application to Transfer Denied
Sept. 20, 1983.

Robert G. Duncan, Gladstone, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Appellant John L. Mondaine was convicted in a jury-tried case of murder in the second degree, § 565.004, RSMo.1978,[1] and sentenced to thirty years imprisonment.

On May 15, 1979, the body of Orethia Haney was found in a wooded area of the "inner city" section of Kansas City, Missouri. Her feet were tied together by an electrical cord and she was wrapped in a plastic Jones Store bag and a bed sheet. The body was partially decomposed but the coroner was able to determine that the victim had died by asphyxiation. This determination was made by way of a process of elimination following an extensive internal and external examination of the body and after checking the blood for toxins.

Originally murder charges were brought against Lydell Thomas who was convicted of this crime. Mr. Thomas, on the advice of his attorney, never spoke to the authorities with regard to this crime and never testified at his trial. After his conviction and sentencing, Thomas then spoke to the police concerning the murder. Subsequent to Thomas' conversation with the police, the charges against him and the conviction were dismissed by the state and the present action was brought against Mondaine.

Some background is needed to explain the relationship between Thomas and appellant Mondaine, and to set the scene for the events surrounding the murder of Orethia Haney. Thomas testified at this trial that while in the penitentiary prior to the death of Haney, he met Edgar Carter, who is also known as "Fat Charlie". Carter, who was to be released before Thomas, told Thomas that he would pick him up in Jefferson City when he was released from prison. Thomas was released from prison on March 17, 1979, and when his ride did not show he took a bus to Columbia. Carter and Mondaine caught up with Thomas in Columbia and gave him a ride into Kansas City.

On the way to Kansas City, Mondaine told Thomas that he had room for him in his "organization" and wanted him to run his "shooting gallery", a house where customers would buy various kinds of drugs and use them on the premises. Mondaine was owner of the drug house. Thomas accepted the job.

In early May, 1979, Thomas remembered seeing the victim arrive at the house with Carter, and they went up to the third floor. A short time later, Carter came down to the second floor to take a shower and soon after the victim came down the stairs and Thomas let her out. Mondaine arrived and after going upstairs to the third floor came

1. All statutory references are to RSMo.1978, unless otherwise indicated.

downstairs ranting and raving that an ounce of cocaine and an ounce of heroin were missing from his refrigerator on the third floor. Mondaine believed that Haney had taken the drugs and ordered Carter to find her. Thomas testified that a few days after the theft of the drugs Carter, Mondaine and a man named L.C. Ward went out to look for the victim in appellant's red jeep. They had determined that she lived at the Commodore Hotel.

James Moore, who lives and works at the Commodore Hotel, testified that about noon on May 10, 1979, he was waiting for a friend outside the hotel. He decided to walk to a nearby store to buy cigarettes. On the way he met Carter, whom he had previously known, and appellant, whom he had seen in Carter's company before. Moore spoke with Carter briefly, then went on to the store. Upon returning to the hotel, Moore noticed that his friend had arrived and he got into his car. As they were leaving, Moore observed appellant and Carter leaving the hotel with the victim. Each had the victim by the arm, one on either side, and were part carrying her and part dragging her out of the building. The victim's feet were off the ground. She was crying and barefoot. Carter and Mondaine put her into the red jeep and drove off. After driving a short distance, Moore, who was the deskman at the hotel, decided to go back to see what was going on and had his friend change directions and return to the hotel. Moore went up to the victim's apartment and observed two men in there, one who lived in the apartment with Haney, and the other was a visitor. At that point a third man, L.C. Ward, came in and asked for Haney's purse and sandals and took them with him. At the police department's request, Moore went down to the police station on May 16, and picked appellant's and Carter's photographs as the two men that left with the victim. The dead body of the victim was found wearing sandals that Moore saw L.C. Ward take from the apartment.

Lydell Thomas testified that Mondaine, Carter and Ward had returned to the drug house with the victim and had taken her up to the second floor. There appellant questioned her about the missing drugs and asked her who was going to pay for them. Mondaine then said that Haney was a "nothing broad" and ordered Carter to kill her. Carter hit the victim knocking her down the flight of stairs to the basement. Mondaine then asked Thomas to kill her, but Thomas declined. All three men then went down to the basement where Carter proceeded to break an electrical cord off a heater and wrap it tightly around the victim's neck. He pressed against the cord with his fingers so as not to leave finger indentations on the neck. Thomas said he then left to answer the door but returned to the basement a few minutes later. By the time he returned, the victim was dead. Thomas testified that appellant stated the reason he had the girl killed was so that people on the streets would not think that they could get away with stealing from him. The victim's hands and feet were then bound with electrical cord and her body was placed in a Jones Store plastic bag. The men then put her into the trunk of L.C. Ward's car and Ward left with the body. The body was discovered a few days later in a vacant lot.

Appellant raises four points of error on appeal. He first contends that there was insufficient evidence to support a verdict of guilty in that there was no substantial evidence establishing the cause of death. Next he contends that the court erred in failing to submit the offense of kidnapping as a lesser and included offense to first degree murder. Third, the appellant alleges the court abused its discretion, to his prejudice, by sustaining the state's objections to appellant's closing argument that in order to convict, the jury must be willing to try one of the defense witnesses for perjury, as the argument was proper as bearing on credibility. Finally, appellant contends he was denied due process and a fair trial because "the state failed to correct the testimony of Lydell Thomas that as a part of his agreement with the state he did not have to testify against the appellant, when the state well knew that such testimony

was incorrect, and thus the jury was misled."

Appellant's first point of insufficient evidence to establish the cause of death is ruled against him.

Mondaine does not challenge the evidence showing that his accomplice caused the death of Haney, but merely asserts that there was insufficient evidence to prove how the victim died. In appellate review of sufficiency of evidence, all evidence and inferences in the record tending to support the jury's finding the defendant guilty are accepted as true, and all contrary evidence and inferences are to be disregarded. *State v. Morgan,* 592 S.W.2d 796, 805 (Mo. banc 1980); *State v. Puckett,* 611 S.W.2d 242, 244 (Mo.App.1980); *State v. Clay,* 627 S.W.2d 659, 660 (Mo.App.1981). In *Holtkamp v. State,* 588 S.W.2d 183, 185 (Mo.App.1979), the court noted, "[a]lthough the State does have the burden of proving the cause of death beyond a reasonable doubt, it may do so using circumstantial evidence." *See also, State v. Black,* 611 S.W.2d 236 (Mo.App. 1980). In the instant case, there was substantial direct evidence as well as circumstantial evidence to show that the victim died as the result of strangulation.

▪ Direct evidence in the form of testimony from Lydell Thomas that he saw appellant's accomplice, Carter, take an electrical cord, wrap it around the victim's neck and press against the cord with his fingers, and that soon afterward Thomas returned and found the victim dead, is sufficient to establish the cause of death. Thomas also described how the men tied the victim with the cord and placed her in a Jones Store plastic bag and a flowered sheet. The victim's body was found by police a few days later, the body was in a Jones Store plastic bag and wrapped in a flowered sheet, the hands and ankles bound by cord, thus corroborating the testimony given by Thomas.

▪ The coroner testified that she had performed a complete internal and external autopsy of the victim's partially decomposed body and could find no obvious injuries. She was able, however, to exclude the possibility of poisoning or disease or natural cause and was thus able to conclude by way of a process of elimination that the cause of death was due to asphyxiation. The appellant challenges the sufficiency of this evidence because the coroner could not testify that she was *positive* as to the cause of death. This opinion testimony was, however, well within the discretion of the trial judge to admit. The trial judge possesses wide discretion in admitting opinion testimony. *Holtkamp v. State, supra,* at 187. "Opinion testimony as to causation is admissible despite the fact that it does not go beyond 'possibility', 'probability', 'could have', or 'might have' as long as it is accompanied by other corroborating causation evidence." *Id.* The state correctly notes in its brief on appeal that it need not conclusively exclude every other possibility of death. *State v. Frazier,* 339 Mo. 966, 98 S.W.2d 707 (1936); *State v. Hill,* 614 S.W.2d 744, 748–49 (Mo.App.1981).

▪ The testimony of the coroner is not excludable merely because she could not absolutely state the cause of death.

▪ In the instant case the coroner's testimony *alone* was not sufficient to establish death by strangulation, although it was sufficient to establish death by asphyxiation. The eyewitness testimony of Lydell Thomas, however, was sufficient even standing alone, to establish that Orethia Haney died from strangulation. The combined testimony of both witnesses along with the corroborated evidence of the condition of the victim's body, was more than sufficient to establish strangulation as the cause of death, and this point is denied.

Appellant's second point of error contends that the trial court erred in failing to submit to the jury for its consideration the offense of kidnapping. This point is also ruled against him.

▪ The appellant contends there was evidence presented at trial from which the jury could have found appellant guilty of kidnapping and not felony murder. The state submits that no instruction on any lesser offense was required because no basis

existed for the jury to acquit appellant of the homicide and to convict him of kidnapping. As the state correctly notes in its brief, "[n]o evidence was introduced to contradict the State's evidence that the victim died, or that she died from any means other than strangulation by appellant's accomplice." Mondaine's evidence was insufficient to mitigate any of the state's evidence of murder, as it simply contended that he did not participate in any aspect of the crime. Mondaine was thus not entitled to an instruction on the crime of kidnapping.

■ The court submitted to the jury for its consideration instructions on the offense of felony murder, capital murder, second degree murder, and manslaughter. The above instructions were the basis for appellant's request for instructions on a lesser included offense. In the instant case, the felony which was alleged to have been the key link in the chain of causation of the victim's death was the kidnapping of the victim. Although appellant made a broad, general objection at trial to all instructions, he failed to make a specific objection to the omission of the lesser included offense instruction. Such general objections are no longer sufficient to preserve appellant's right to complain of error upon appellate review. *State v. Olson,* 636 S.W.2d 318, 323 (Mo. banc 1982). *Olson* was decided several months after this case was heard in the trial court and appellant argues that it should not be afforded retroactive effect. The retroactive application of *Olson* need not be dealt with here because appellant's allegation of error can be resolved and disposed of by other means. Appellant's allegation here can only be reviewed under the plain error rule, Rule 29.12, V.A.M.R., for manifest injustice, because appellant failed to raise his objection in his motion for new trial, as required to preserve this issue for appellate review. *State v. Mason,* 571 S.W.2d 246, 248–49 (Mo. banc 1978); *State v. Harris,* 620 S.W.2d 349 (Mo. banc 1981).

In *State v. Hill,* 614 S.W.2d 744, 750 (Mo. App.1981), the court noted, "[i]t has consistently been held that an instruction on a lesser included offense is required *only* *where there is evidence* with probative value *which could form* the *basis of an acquittal of the greater offense and a conviction of the lesser included offense.*" (Emphasis added). *See also, State v. Davis,* 625 S.W.2d 903 (Mo.App.1981); *State v. Neighbors,* 613 S.W.2d 143, 148 (Mo.App.1980). It is clear that in the instant case there is no evidence which could form the basis of an acquittal of the greater offense and a conviction of the lesser offense.

All of the evidence presented by the appellant was directed to his allegation that he was not involved in any way with either the kidnapping or the murder of Haney. Mondaine presented no affirmative evidence whatsoever to contradict the state's evidence as to the death of Haney, and its causation. In a felony murder charge the sole additional element that is not present in a kidnapping charge is the homicide of the victim. Thus, the above factors become quite important as none of the appellant's evidence addressed or contradicted in any way the evidence produced by the state showing that appellant's accomplice, Edgar Carter, strangled the victim in the basement of appellant's home. Appellant presented evidence and argued adamantly that he *was not* the individual involved in the kidnapping of the victim. Here there was no testimony in the state's or appellant's case which mitigated the offense or proved a different version of it. The defense was simply that appellant did not do it at all. No facts or evidence were presented to refute the homicide element of the felony murder. Evidence was presented that the victim was dead and that her death had occurred from strangulation. Thus, the appellant's evidence that he was not involved in any aspect of the crime is sufficient as a basis for requiring an instruction on a lesser included offense. There being no miscarriage of justice or manifest injustice because of this matter, the point is denied.

Appellant's third point on appeal contends that the court prejudicially abused its discretion and erred in sustaining the state's objections to appellant's closing ar-

gument that in order to convict appellant, the jury must be willing to try defense witness Carponetto for perjury.

The appellant's third point is ruled against him.

Appellant contends that his statement during closing argument to the effect that the jury had to be willing to convict appellant's witness of perjury in order to convict appellant of the alleged crime should have been allowed since a similar statement was allowed the prosecution in *State v. Nauman,* 592 S.W.2d 258 (Mo. App.1979). This argument must fail because it is *within* the *court's wide discretion to permit or deny* this type of statement and the trial court did not abuse its discretion in the instant case. In *State v. Mensah,* 625 S.W.2d 135 (Mo.1981), the Supreme Court held:

> The trial court is accorded wide discretion as to the scope of argument by counsel as it relates to whether or not an improper argument is so prejudicial under the facts and circumstances of a particular case to warrant a reprimand of counsel or a discharge of the jury. *Reversal will not be granted unless an abuse of that discretion demonstrates prejudice to an accused.* (Emphasis added).

Due deference must be afforded the decision of the trial court since it is in the best position to determine the propriety of the argument and the appropriate remedy, if required. *State v. Martin,* 624 S.W.2d 879, 884 (Mo.App.1981); *State v. Brueckner,* 617 S.W.2d 405, 410 (Mo.App.1981).

The appellant put on witness Ross Carponetto as an alibi witness for Mondaine. Carponetto and his sons have a carpet business and were allegedly laying carpet in a house that Mondaine owned (not the drug house) on the day Haney was murdered. The appellant hoped to establish that Carponetto was in Mondaine's presence at the house across town, laying carpet at the time the alleged events occurred.

In the present case, appellant's attorney in addressing the jury during closing argument stated that the jury "would have to say that Ross Carponetto came down to this Court and he lied and you have got to be ready to come after this case and try Ross Carponetto for perjury." Section 575.040 RSMo., defines perjury as *knowingly giving false testimony* concerning a material fact while under oath. It is clear that the jury could have disbelieved Carponetto without concluding that he intentionally and knowingly gave false testimony. *See State v. Lee,* 617 S.W.2d 398, 403 (Mo.1981). In the alternative, the jury could have believed the testimony of Carponetto and still have found Mondaine guilty because he only testified that he was at Mondaine's home on the 10th of May, he went to lunch and by the time he returned the appellant was gone. Carponetto was unable to specify the exact time that he saw Mondaine at the house or when he went to lunch or returned. The uncertain nature of Carponetto's testimony, given some two years after the events in question, is reflected in the transcript at pages 490 through 492:

> Q. And the question I suppose that in honesty I have to propose to you is, can you say for certain that you were with Mr. Mondaine on May 10th, 1979 from say eleven o'clock in the morning to two o'clock in the afternoon? Can you say for certain that he was in your presence all during that period of time?
>
> A. Well, he was there in the morning is all I can say and I left before he did.
>
> Q. [I]s there anything specifically that you now can refer back to so that we could, you know, be as certain as possible that in fact it was the 10th day of May, 1979 that you had this problem with the hole in the floor?
>
> A. Well, just the way the work is laid out is about all I can say. I haven't got any records except we was there.
>
> Q. And so basically, what you're doing is, you are just looking back now timewise and trying as best you can, to recount how the job went?
>
> A. Yeah.

Thus, Carponetto's testimony, even if believed, would not necessarily exonerate ap-

pellant of the crime alleged in this case. Carponetto could only testify that Mondaine was in his presence during the morning of the 10th and was unable to state with certainty that he was with Mondaine from eleven in the morning until two o'clock in the afternoon when the alleged crime occurred. It is therefore clear that the court's decision to sustain the state's objection to appellant's statement was not prejudicial error. The court in *State v. Nauman, supra,* at 261–62, noted that an earlier decision, *State v. Cage,* 452 S.W.2d 125, 130 (Mo.1970), had refused to allow such an argument. In the instant case there was no clear abuse of discretion and the court's decision to sustain the state's objection did not amount to error.

Appellant's final point contends that he was denied due process of law and a fair trial in that Lydell Thomas testified that his appearance and testimony at the trial was not compelled by the state and was not part of an agreement with the state, and was completely voluntary. Appellant contends that this testimony was misleading to the jury, and that the state was obligated to correct the testimony as it knew it was false, and that this resulted in prejudice to appellant.

Thomas testified at trial that "I didn't have to testify in this matter." The appellant contends that this was false testimony and that the prosecutor was under an obligation to correct it. This allegation was not raised at trial or in the motion for new trial and thus can only be reviewed under Rule 29.12 as plain error.

■ Appellant's final point is ruled against him, as he has failed to establish any error in regard to the testimony of Lydell Thomas. From the outset of the trial, the fact that the state may have dismissed charges against Thomas in return for his testimony in this case was never concealed from either the appellant or the jury. Appellant's own brief notes that during the voir dire of the jury panel the prosecutor made the following statement:

Now then, I want to read something to you and I want you to please listen be-

cause in trying to articulate it I may have confused it. The evidence in this case will show that one of the State's witnesses was earlier convicted of the same offense that the defendant is now on charge for; then that witness was given a new trial and that at a later time, the *State dismissed that charge against that defendant for his testimony in this case.* (Emphasis added).

In the state's opening statement, the prosecutor again emphasized the circumstances surrounding Thomas' testimony in this case, stating:

He will testify that he wanted to tell the police what had really happened. He will testify that on November the 13th, 1980, he had a conversation with the Police Department in which he related this information that he's going to testify to that I have covered with you. He then made a video statement, video taped statement a little bit later on in November. He will testify that *as a result of his statements* that *he was given a new trial,* he will testify that he believes the State dismissed the case against him, which they did. *He agreed to testify in this case under those circumstances.* (Emphasis added).

It is thus clear that no attempt was made by the state to conceal the possibility that Thomas' testimony was predicated on the earlier dismissal of charges by the state.

The state correctly notes in its brief that "[t]o obtain a new trial because of perjured testimony, a *defendant should show* that the *testimony* at the criminal trial *was deliberately false and known to be false;* that the *prosecution used the testimony knowing it to be false;* and the *conviction* was *obtained* on account of perjured testimony." (Emphasis added). *Duncan v. State,* 520 S.W.2d 123, 124 (Mo.App.1975); *State v. Gant,* 586 S.W.2d 755, 764 (Mo.App.1979). The appellant here has failed to meet the above burden of proof. Appellant here has failed to show either that the testimony was, in fact, false or that it was known to be false, and that the prosecution used the testimony knowing it to be false, and the

conviction of appellant was due to such testimony.

It is clear that Thomas testified in this case because of the dismissal of the charges against him. This fact was expressly disclosed by the state to both appellant and the jury. Although Thomas' testimony was somewhat inconsistent with the prosecutor's presentation, it was not so inconsistent as to require a finding of prejudicial error. Counsel for appellant did an excellent job in cross-examining Thomas for the most part and in eliciting his prior inconsistent statements. There is thus no reason why the questions of credibility raised by the witness' testimony should not be left to the jury to determine as trier of fact. The appellant was not prejudiced by Thomas' testimony and no manifest injustice nor miscarriage of justice resulted.

The judgment of the trial court is affirmed.

All concur.