**Charles Ray KELLICK, Petitioner,**

v.

**Donald WYRICK, Warden, Respondent.**

No. 76-465C(2).

United States District Court,
E. D. Missouri, E. D.

Feb. 10, 1977.

Paul C. Hetterman, St. Louis, Mo., for petitioner.

John C. Danforth, Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM OPINION

REGAN, District Judge.

Petitioner, a prisoner of the State of Missouri, seeks habeas corpus relief from his confinement in the state penitentiary following his May 22, 1973 conviction in the Circuit Court of Wayne County of the crimes of burglary, second degree, and stealing, for which he was sentenced on October 5, 1973, to two consecutive terms of five years imprisonment.

The conviction was affirmed by the Missouri Court of Appeals, Springfield District. *State v. Kellick*, 521 S.W.2d 166 (1975). Thereafter, petitioner moved to vacate the judgment and sentence pursuant to Missouri Supreme Court Rule 27.26. The trial court's order denying the motion without an evidentiary hearing was affirmed by the Missouri Court of Appeals, Springfield District, on April 23, 1976. The present petition was filed pro se on May 24, 1976. It is thus evident that as of that date petitioner could not have exhausted his then available state remedies (an adverse ruling on motions for rehearing and to transfer filed in the Court of Appeals within 15 days and the subsequent denial of an application for transfer filed in the Missouri Supreme Court within 30 days after such adverse ruling). However, because we were not made aware of such failure until the prescribed time had elapsed, and because we find no basis for believing that petitioner deliberately by-passed his then available remedy, we concluded to consider the petition on its merits, appointed counsel and held an evidentiary hearing.

The principal grounds relied on by petitioner may be summarized as follows: (1) The prosecuting attorney sought to impeach him on cross-examination with a non-existent murder conviction and then argued to the jury that it should not turn a convicted murderer loose, (2) the information charged petitioner under Section 560.045 R.S.Mo. with the crime of burglary of a dwelling house but the jury convicted him of burglary of a building where goods and wares were kept, a different crime, proscribed by Section 560.070 R.S.Mo., with respect to which petitioner had received no notice or opportunity to be heard, and (3) that he was denied effective assistance of counsel, in that counsel (a) failed to object to the prosecutor's reference to the non-existent murder conviction, (b) failed to object to instructions submitting a crime different from that with which petitioner was charged, (c) failed to ascertain that the transcript on appeal withheld all references to the murder conviction, (d) failed to raise on appeal the issues of the prosecutor's impropriety and the improper conviction, and (e) failed to question the propriety of the sentence of petitioner to consecutive terms of imprisonment.

As prepared by the court reporter, the transcript of petitioner's cross-examination contains no reference whatever to a murder or murder conviction. In effect, what petitioner contends is that the court reporter falsified the transcript by omitting a material portion of the cross-examination. The reporter is now dead so that he is unavailable to respond to petitioner's charges, and unfortunately, his trial notes cannot be deciphered. We ordered the evidentiary hearing to resolve the evidentiary conflict respecting plaintiff's claims.

The transcript of the cross-examination reflects that after testifying he had served a term of imprisonment in the Menard State Penitentiary for escape, petitioner was asked, "Where did you escape from?" and that petitioner answered, "St. Clair County jail." Petitioner contends (and he so testified) that the prosecutor then asked the following questions which are not in the transcript: "What were you in the jail for? Wasn't it murder?" to which petitioner made no response. Petitioner's brother, John M. Kellick, gave a somewhat different version of the prosecutor's alleged reference to murder. He testified that after petitioner testified he was in Menard State Penitentiary in 1965 the prosecutor asked whether he was there "for murder," and that petitioner answered "No, for escape."

Both petitioner's trial attorney, William Rader, and the prosecutor, Michael Lorch, denied that the prosecutor had made any reference whatever to a murder or to a murder conviction and verified the accuracy of the trial transcript. Lorch testified that he first learned of this claim of petitioner when so informed in a telephone call by Missouri Assistant Attorney General Arnet after the instant petition was filed. Rader testified that his first knowledge of petitioner's contention was in July, 1976, when he received a letter from petitioner's wife. Rader, an attorney experienced in the trial

of criminal cases, further testified that had the prosecutor made the alleged comment, he would have immediately objected and moved for a mistrial. Lorch testified that from his point of view as an experienced prosecutor, the case against petitioner was a strong one and he would not have injected such an obvious error. We credit the testimony of Lorch and Rader and find that no reference to a murder or murder conviction was made by the prosecutor and that no part of petitioner's cross-examination was omitted from the transcript.

■ No doubt because the only point raised on petitioner's direct appeal pertained to the sufficiency of the evidence, the transcript does not include the arguments to the jury. Petitioner has alleged that in his argument to the jury, the prosecutor "commented" upon the alleged murder conviction. In his sworn traverse (filed July 14, 1976), petitioner reconstructs the alleged "comment" as follows:

"Ladies and Gentlemen of the jury, could you possibly sleep at nights knowing that this man is free—he has been in jail for murder and many other crimes, and with him sneaking out behind your house after dark."

At the hearing in this Court, petitioner's father testified that he wasn't paying much attention to the closing argument, but that during a recess in the trial, he heard the prosecutor conversing with unnamed members of the jury in the hallway, during which the prosecutor made a statement to the effect "Do you want to let this boy loose and let him commit another murder."

We find from the overwhelming weight of the credible evidence that Lorch made no comment in his argument to the jury concerning a murder or murder conviction and that Lorch did not state or imply at any time that petitioner had either committed or been convicted of a murder. We further find that Lorch did not discuss the case or

engage in the alleged conversation with any juror.

We next consider petitioner's contention that he was convicted of a crime with which he was not charged, that is, that the information charged a violation of Section 560.-045 R.S.Mo., whereas the verdict-directing instruction submitted a violation of Section 560.070 R.S.Mo., which defines an entirely different crime.

■ Basically, the contention involves a construction of Missouri law as applied to the information, the instructions and the evidence, *not* a federal constitutional question, particularly since petitioner does not urge that the evidence was wholly insufficient to warrant a conviction for second degree burglary. We have, nevertheless, considered the matter (in part because of petitioner's claim that he was afforded inadequate representation by his retained counsel), and hold that the claim is without merit.

■ Section 560.045 provides:

"Every person who is convicted of breaking into a *dwelling house*, with intent to commit a felony or to steal, but under such circumstances as do not constitute the offense of burglary in the first degree, shall be deemed guilty of burglary in the second degree." [1]

The statute under which petitioner was convicted, Section 560.070 R.S.Mo. provides in pertinent part:

"Every person who shall be convicted of breaking and entering *any building*, the breaking and entering of which shall not be declared by any statute of this state to be burglary in the first degree, . . . in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal or commit any crime therein, shall, on convic-

---

1. The "circumstances" which must be proved to permit a finding that the burglary was in the first degree are (1) that at the time of the breaking and entering into the dwelling house there was a human being therein and (2) that the breaking and entering be effected in one of the *methods specified* in Section 560.040 R.S.Mo. *State v. Young*, 345 Mo. 407, 133 S.W.2d 404, 406; *State v. Johnson*, Mo., 454 S.W.2d 27, 29.

tion, be adjudged guilty of burglary in the second degree."

It is immediately apparent that a second degree burglary conviction under Section 560.095 for breaking into a *dwelling house* may be sustained without proof that at the time of the burglary there was a human being in the house or that goods, wares, merchandise or other valuable things were kept or deposited therein. On the other hand, under Section 560.070, the presence at the time either of a human being or of goods, wares, merchandise or other valuable thing kept or deposited in the building must be proved.

In this case, the verdict directing instruction unquestionably submitted all of the elements of the offense proscribed by Section 560.070. The thrust of petitioner's argument is that he was charged with the burglary of a "dwelling house," and that since the evidence showed "clearly" that the building was not a dwelling house, there was a failure of proof. Petitioner's appointed counsel in this Court has made the further contention (not raised in the state proceeding) that the alleged variance between the charge and the instructions based on the evidence deprives him of the future defense of double jeopardy.

To the extent here relevant, the information charged that petitioner did "feloniously and burglariously and forcibly break and enter a *dwelling* owned by Roy Patterson . . . with the felonious and burglarious intent to steal, take and carry away certain goods, wares, merchandise and personal property then and there kept and deposited in said *building* . . . ."

Petitioner's contentions are premised on the use of the word "dwelling" in the first part of the information, and the substitution therefor of the word "building" in the verdict directing instruction which, in all other respects, is in conformity with the charge as laid in the information. We do not believe there was a fatal variance.

Petitioner has cited us to two decisions of the Missouri Court of Appeals, *State v.*

*Burnham*, 501 S.W.2d 521 (1973) and *State v. Lenzing* not yet reported. He informs us that the *Lenzing* case has been transferred to the Supreme Court of Missouri, and so far as we are advised, it has not yet been decided. In *Burnham*, which was a direct appeal, the defendant was charged with the burglary of a *building* under circumstances constituting a violation of Section 560.070 (that is, that goods, wares, merchandise, etc. were kept and deposited in the building). The evidence showed that the building which was broken and entered was the *residence* (or dwelling house) of named persons. The verdict directing instruction authorized the jury to convict upon a finding that defendant by the use of force opened a closed door of the *dwelling house* of the named persons with the intent to steal property therein. The appellate court held that this constituted a fatal variance, ruling that the two statutes, "prescribing different factual elements underlying the proscribed offenses," constitute separate and distinct offenses, and rejected the state's argument that a "dwelling house" is a "building."

Petitioner states that the *Lenzing* case involves facts similar to *Burnham*. If so, the decision of the Missouri Supreme Court will authoritatively determine whether *Burnham* is a proper statement of Missouri law. However, we need not speculate as to the ultimate decision in *Lenzing*, inasmuch as it would not be determinative of the present case, if for no other reason than that the word "dwelling" as used in the information may not be equated with the words "dwelling *house*" as used in the statute.

Initially, we note that Section 560.045 has reference, not to a "dwelling," but to a "dwelling *house*." The term "dwelling" is nowhere defined or referred to in the burglary statutes, all of which have, with various changes in phraseology, been in effect since at least early statehood. The only definition of "dwelling *house*" we find in any Missouri statute is that in Section 560.-015 R.S.Mo. to the effect that "(e)very house, prison, jail or other edifice, which

shall have been *usually occupied by persons lodging therein*, shall be deemed a dwelling house of any person having charge thereof or so lodging therein . . . ." By its placement in the statutes, this definition may have reference only to the offense of arson. In *State v. Jones*, Mo., 365 S.W.2d 508, 512, (a burglary case), it is said that "(t)he term 'dwelling house' is not defined by the statutes. At common law it included any place with some degree of permanency *in which one or more persons resided*, and it included 'any room or unit in which a person *actually dwells*, such as a room in a large house, a room in a hotel . . .'" The *Jones* case held that one room of a larger building, *when in fact used as the place of abode* or living quarters of an individual could be deemed a dwelling house. And see *State v. Weber*, 156 Mo. 257, 56 S.W. 893, in which it was said in reference to the building there involved, "And, being *occupied* by him as a dwelling house, it must be held to have been such; for the *use* to which a house is put usually determines its character."

It is obvious to us that the word "dwelling" was used in the information not as referring to the *use* of the premises as a dwelling *house*, but rather as to the type of construction of the building. There is not the slightest indication in the record that petitioner was misled in any way. Had any question been raised, we have no doubt that the court would have permitted the prosecutor to amend the information by substituting the word "building" for the word "dwelling" in the one place that word appeared.[2] The information describes the "dwelling" as owned by Roy Patterson and locate it as near Wappapello, Missouri, on Z Highway. Only *one* building could possibly fit that description, inasmuch as the "dwelling" was the *only* building on Z Highway owned by Roy Patterson. Hence, not only was there no possibility of misapprehension as to the particular premises burglarized,

but there could be no conceivable danger of double jeopardy. Cf. *State v. Eaton*, 504 S.W.2d 12, 16 (Mo.1973).

We add, for whatever it may be worth, that the historical development of Section 560.070 does not support petitioner's argument. Until the statute was changed in 1899, it meshed with Section 560.045, which distinguished second degree from first degree burglaries of *dwelling houses*. Section 560.070, *as it then read*, was obviously intended to cover burglaries of premises other than dwelling houses, so that the two statutes complemented each other. Prior to the 1899 amendment it pertained to two kinds of premises: (1) "any building within the curtilage of a dwelling house but not forming a part thereof;"[3] and (2) "any shop, store, booth, tent, warehouse, or other building" etc. By Laws 1899, a significant change was made whereby all of the foregoing quoted language, except the first two words, "any building," was eliminated. The effect was to *expand* the scope of the statute, so that, literally at least, no distinction is *now* made as to kind of building the breaking and entering of which is second degree burglary.

We have not overlooked the fact that in the pre-1899 version of Section 560.070 the general words "or other building," immediately follow the specific words "any shop, store, booth, tent, warehouse." The earlier statute was authoritatively construed by the Missouri Supreme Court in *State v. Schuchmann*, 133 Mo. 111, 33 S.W. 35. Applying the doctrine of ejusdem generis, the Court held that the general words "or other building" are *limited* in their application to buildings of *like kind* with those specifically enumerated.

We recognize that the legislative intent, if ascertainable, governs, so that it can be argued that by *reading the amended Section 560.070* together with the older Section 560.045, the words "any building" in the

---

**2.** The citation, inter alia, of Section 560.045 in the information was unnecessary under Missouri law and was mere surplusage. Cf. *State v. Aston*, 412 S.W.2d 175, 182 (Mo.1967).

**3.** Section 560.065 R.S.Mo. provides that no building shall be deemed a dwelling house unless the same be joined to, immediately connected with and is part of a dwelling house.

former could be construed to mean "any building *except* a dwelling house." The difficulty with this construction of the 1899 amended statute is that it would render *completely meaningless* and without any purpose whatever the additional words, "the breaking and entering of which [building] shall not be declared by any statute of this state to be burglary in the first degree." Inasmuch as the *only* statute respecting burglary in the first degree (Section 560.040) has application *only* to *dwelling houses*, this language clearly indicates the legislative intent to make burglaries of *all* buildings, inclusive of dwelling houses, burglary in the second degree, if at the time of such burglary goods, wares, merchandise or other valuable thing were kept or deposited therein, or if there was a human being therein and the breaking and entering was effected by a method other than that which would constitute the crime of burglary in the first degree.

This does not mean that Section 560.045 would no longer be effective. A prosecution under that statute could be maintained in situations (not here involved) where it is alleged and proved that no human being was in the premises at the time of the burglary and that no goods, wares, merchandise or other valuable thing were kept or deposited in the building.

We add that if it had been the legislative purpose to exclude *all* burglaries of dwelling houses from the amended Section 560.-070, such a legislative intent could have been very simply manifested by adding to the words "the breaking and entering of which shall not be declared by any statute of this state to be burglary in the first degree," the words "or burglary in the second degree of a dwelling house." Of course, an even more direct method of expressing such an intent would have been to simply add after the words "any building" the words "other than a dwelling house."

■ By way of summary, the proper construction of its burglary statutes is for the Missouri courts, and petitioner's conviction having been upheld in his Rule 27.26 proceeding (in which the alleged variance was raised as a ground), we find no federal constitutional basis for petitioner's complaint with respect thereto. Our own independent construction of the Missouri statutes and of the information leads to the same result.

■ A further ground of the petition is that the trial court took into consideration petitioner's arrest for possession of burglary tools in determining to sentence petitioner to consecutive rather than concurrent terms of imprisonment for burglary and stealing. Section 560.110 provides that if in committing burglary, a person shall also commit the crime of stealing, he shall be punishable by imprisonment therefor, *in addition* to the punishment for burglary. However, as amended in 1957, the statute further provides that notwithstanding the foregoing, the court shall state in pronouncing sentence whether the additional term of imprisonment is to run consecutively or concurrently, and if the court fails to do so, the terms shall run concurrently. Thus, the determination of whether the sentences shall run consecutively or concurrently is committed by statute to the *discretion* of the sentencing judge. Whether there has been an abuse of discretion is for the state courts. We find no abuse of discretion.

■ The sole evidence supportive of his contention is petitioner's testimony that at the time of sentencing, the judge "brought up" the fact that petitioner had been "charged" with possession of burglary tools. What petitioner argues is that the matter should not have been adverted to at all, on the theory that since the charge had been dismissed at a preliminary hearing, petitioner's rights were violated by the mere reference to it at the time of the formal sentencing. However, there is no contention (and certainly no evidence) that the judge was under the belief that the "charge" had been proved or that petitioner had been convicted of the offense. His mere mention of the dismissed charge does not mean that it was the reason for the decision of the trial judge

to impose consecutive sentences. We hold that petitioner has not substantiated by credible evidence his complaint that the sentencing judge violated petitioner's constitutional rights in sentencing him to consecutive terms of imprisonment.

The remaining ground—alleged ineffective representation of counsel—is wholly lacking in merit. The claim of ineffective representation is based on the assumption, which we have held to be without foundation, that (without objection by Rader) the prosecutor made reference to an alleged murder and murder conviction in the cross-examination and in argument to the jury, and the contention that counsel improperly failed to object to or raise on appeal the alleged mention of the dismissed burglary tool charge by the sentencing judge, and to the "variance" between the instruction and the information. What we have ruled, supra, is here applicable. Counsel provided petitioner adequate representation. At the very least, counsel's performance, in our judgment, passed the test of "reasonable competence."

It follows from the foregoing that petitioner is not entitled to a writ of habeas corpus. Accordingly, an order will be entered dismissing the petition.