John PHILLIPS, Oliver Deppen and John Withington, Trustees of Lake St. Clair, Plaintiffs–Appellants,

and

James Garrison, Russell Bills, and Frank Penrose, Intervenor–Plaintiffs–Appellants,

v.

George SCHWARTZ, Robert Reineke, James Cottingham, Edward Turley, Lewis Barron, Charles Hopson, Defendants–Respondents,

and

Authorized Investors Group, Inc., Intervenor–Defendant–Respondent.

No. 41244.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 14, 1980.

David J. Barton, Clayton, for plaintiffs–appellants.

Prudence L. Fink, Union, for intervenor–plaintiffs–appellants.

Herbert K. Hoffman, Clayton, for George Schwartz.

Glennon R. Vatterott, Vatterott, Shaffar, Dolan & Pepka, St. Ann, for Reineke, Cottingham, Turley, Barron and Hopson.

Jeremiah Nixon, Hillsboro, for Authorized Investors Group, Inc.

SNYDER, Judge.

The trustees of Lake St. Clair subdivision and intervenor–plaintiffs appeal from a decision of the Franklin County Circuit Court denying an injunction to prohibit certain lot owners from keeping camper–trailers on their lots. The trustees claimed that the presence of these trailers was in violation of restrictions governing the development. The trial court found the restriction referring to "trailer or movable house" meant mobile home, and did not encompass respondents' camper–trailers. The trial court's judgment is affirmed.

Appellants claim: (1) the trial court erred as a matter of law by failing to give the word "trailer" its plain meaning and finding that respondents' camper–trailers were not "trailers" within the meaning of paragraph nine of the covenant of restrictions; [1] (2) the trial court's finding was not supported by substantial evidence and was against the weight of the evidence; (3) the trial court erred by not finding that respondents' camper–trailers violated other provisions of the restrictive covenants, [2] because the camper–trailers contained less than 800 square feet, were covered with metal or canvas and were placed without the prior approval of the trustees.

Respondents argue that the trial court's interpretation of the word "trailer" was proper and in accord with the development of Lake St. Clair. Alternatively, they claim that even if the court's interpretation was erroneous, the injunction should be denied because the restriction has been waived by the pervasive use of camper–trailers and

1. "9.... nor shall any trailer or movable house be permitted on said lot...."

2. "7. No improvements or fences may be constructed or grades of lots changed or used in subdivision unless in conformity with law and unless plans and specifications therefor have first been approved in writing by Trustees ... and unless improvements are for private dwelling purposes and appurtenant uses. *All main dwellings shall contain a minimum of 800 square feet* under roof, exclusive of porches, basements, breezeways, stables and garages, unless Trustees or a qualified architect or architects appointed by them shall be of the opinion, in writing, that a smaller area ... shall be in harmony with the quality and standards of

other dwellings or proposed dwellings in the subdivision. Standards of Trustees for approval of any plans ... shall take into consideration the location and terrain of any proposed structure ...." [Emphasis added].

"9. There will be no restrictions as to cost of any residence, but complete plans and specifications must be *submitted for the written approval of Grantor before building operations are started. No residence shall be wholly or partially covered with tar paper, metal slabs or canvas,* nor shall any trailer or movable house be permitted on said lot. No basement shall be occupied while construction continues or temporarily abates." [Emphasis added].

the construction and maintenance of facilities to accommodate them, and that the appellants are guilty of laches. Predictably, appellants deny that they are guilty of laches or that the restrictions have been waived.

The appellant trustees, John Phillips, Oliver Deppen and John Withington, sued the respondent lot owners, George Schwartz, Robert Reineke, James Cottingham, Lewis Barron and Charles Hopson, all of whom had camper–trailers parked on their lots. Three home owners (James Garrison, Russell Bills and Frank Penrose) were permitted to intervene on behalf of the plaintiff trustees, and the developer (Authorized Investors Group, Inc.) was permitted to intervene as a defendant because of its interest as title holder to numerous lots in the development. The intervenor–plaintiffs and intervenor–defendant are also parties to the appeal.

The individual respondents filed a counterclaim for injunctive relief which was denied by the trial court. No appeal was taken from this judgment and therefore it is not subject to appellate review.

Lake St. Clair is a residential–recreational development comprising 1,355 lots and four lakes located in Franklin County, Missouri. The development consists of eight separately recorded plats with an attendant indenture of restrictions filed for record with each plat. Development began in 1966. There was only one home in the development in 1969. There were two in 1970 and 1971. Prior to 1969, lot owners made use of the land on weekends and holidays by camping in trailers or tents. Since 1969, some owners have built homes while others continue to make use of the land by camping. At trial time, seventy-two homes had been constructed. The trial court found that camper–trailers have been used each and every year from 1968 to 1977 with over one hundred being present each year since 1974.

The officials of the developing corporation were the original trustees and remained trustees until 1976. They encouraged the use of camper–trailers without their removal between April and October. This arrangement relieved the lot owners of the burden of constantly hauling their trailers back and forth every week. The requested removal of the trailers between November and March arose out of diminished winter activity and security considerations. The principal developer and original trustee, R. E. Faulkenberry, testified that lot owners were allowed to build homes but were not required to do so. Further, Faulkenberry testified that during his ten years' tenure as trustee, the restriction against "trailer or movable house" was enforced so as to keep the development from becoming a mobile home court by keeping only mobile homes, not camper–trailers, off the lots.

The present trustees assumed their positions in 1976. They used camper–trailers prior to building their homes. Not only did the intervening home owners use trailers prior to construction of their homes, but two of them admitted they had camper–trailers parked at their homes at the time of the trial. Over the years, permits were issued by the trustees to install electric hook–ups for camper–trailers. Six restrooms were constructed on the development for people without homes. A dumping station designed to dispose of sewage from camper–trailer toilets was also built. Additionally, the lot owners were permitted to build driveways on the lots without a building permit. Permits were granted routinely by the trustees for the construction of eight by ten foot metal storage sheds.

The respondents do not permanently reside at Lake St. Clair. However, their camper–trailers have been continuously parked at the development. The camper-trailers varied in type, size and facilities but they were undoubtedly typical of the variety of vehicles located at Lake St. Clair. Respondent Schwartz's vehicle was 22 feet long, had four wheels, two axles, a toilet, a shower and cooking and sleeping facilities. Respondent Cottingham's vehicle was 21 feet long, had two wheels with a hitch, a toilet, and cooking and sleeping facilities. Respondent Hopson's pop–up tent trailer was six–and–a–half feet long and four–

and–a–half feet wide with sleeping facilities, but no toilet or cooking facilities. Respondent Reineke's vehicle was 15 feet long, had two wheels with a yoke and cooking and sleeping facilities but no bathing facilities. Respondent Barron's vehicle was 16 feet long, had two wheels and cooking, sleeping and bathing facilities. None were self–propelled, but were designed to be hauled behind a car.

Respondents refused the trustees' request to remove their camper–trailers. As a result, the trustees sought an injunction to force their removal. The trustees relied upon paragraph nine of the restrictions. The restrictions were adopted by the developer, and they can be traced to other similar lake development restrictions dating back to the 1950's. The trustees sued only those lot owners with camper–trailers who did not have permanent homes, and did not seek to enforce the restriction against those with homes who also had camper–trailers parked on their property.

After hearing the evidence, the trial court found that "trailer or movable house" as contemplated by the indenture of restrictions did not include camper–trailers as owned by the respondents. Rather, "[t]he term trailer in paragraph nine of the restrictions means mobile home, not easily towed camper–trailers." Accordingly, the injunction was denied.

■ Court–tried cases are reviewed upon both the law and the evidence under Rule 73.01, with due regard given to the trial court's opportunity to judge the credibility of the witnesses. *In re Marriage of Roedel*, 550 S.W.2d 208, 210 (Mo.App.1977); *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501, 503 (Mo. App.1977). Under *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), the trial court's judgment is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Reversal on the ground that the judgment is against the weight of the evidence should be exercised with caution and only with a firm belief that the decree is wrong.

Preliminarily respondent Authorized Investors Group, Inc. argues that the restrictions applied only to the easements, drives and common grounds and not to the individual lots. The trial court made no specific finding on this point but a fair reading of the restrictions discloses an intent that they apply to the individual lots. Any other interpretation would be illogical.

Appellants first contend the term "trailer" is unambiguous and its plain meaning is the dictionary definition. Webster's Third New International Dictionary defines "trailer" as follows:

> "4: a vehicle or one in a succession of vehicles hauled usu. by some other vehicle: as a: car on a streetcar line pulled by another car b: a light 2–wheeled car pulled (as by a bicycle or motorcycle) c: a nonautomotive highway or industrial–plant vehicle designed to be hauled (as by a tractor, motort ruck (sic), or passenger automobile) . . . d: one of several logging sleds that are hauled tandem by steam or gasoline power or by four to eight horses e: an automobile–drawn highway vehicle designed to serve wherever it is parked as a dwelling or as a place of business (as an office, laboratory, or field headquarters) . . . ."

The American Heritage Dictionary of the English Language definition is: "A large transport vehicle designed to be hauled by a truck or tractor; a furnished van drawn by a truck or automobile and used as a house or office when parked."

It is obvious that the dictionary definitions encompass many different types of towed vehicles and, contrary to the contention of the appellants, there is no "ordinary" meaning which can be used without regard to the circumstances surrounding its use. Webster's definition says a trailer is a vehicle designed to serve as a "dwelling," a term itself subject to interpretation by the law.

■ The plain meaning of the term "trailer," therefore, is not as readily discernible as the trustees propose. Language is continually developing to reflect social

and scientific change. New words are coined and old words become engrafted with new meanings. The word "trailer" exemplifies the latter situation. It was in general use long before camper–trailers existed. Today, a general reference to "trailer" may mean a mobile home, a house trailer, a camper–trailer or a tractor–trailer. Thus, the word "trailer" is ambiguous in the context in which it was used in the restrictions and construction is required to determine its meaning as used in 1966 when the restrictions were drafted.

■ Appellant's second point charges the trial court's judgment was not supported by substantial evidence and was against the weight of the evidence. When ascertaining the meaning of a term in a restrictive covenant, general precepts must be recalled. Restrictive covenants are not favorites of the law. Where their meaning is properly open to construction, they will be strictly construed. They will not be attended by implication and any reasonable doubt as to their meaning will be resolved in favor of the free use of the land. *Brasher v. Grove*, 551 S.W.2d 302, 303[1–4] (Mo.App.1977).

■ The intent of the parties is also important: "The primary object in construing any instrument of this character [a covenant of restriction] is to ascertain the intention of the parties, and this almost necessarily requires an inquiry into the purpose which the parties sought to accomplish [explanation added]." *Hanna v. Nowell*, 330 S.W.2d 595, 599[1–5] (Mo.App.1959). Also in determining the meaning of an instrument, "it is always permissible for the court to consider the situation of the parties, and the accompanying circumstances at the time of the execution of the contract." *Steffen v. Pacific Mutual Life Insurance Co.*, 442 S.W.2d 142, 145[2–4] (Mo.App. 1969).

Because of the circumstances surrounding the developer, the lot owners, and the development itself, and because of the intent of the parties, the purpose of the restriction in this case was to prohibit only the placing of mobile homes on the lots and not the use of camper–trailers. Mr. Faulk-

enberry, a developer and a trustee until the present trustees were elected, testified that the intent of the developers was that "trailer or movable house" as used in the restrictions meant mobile home. In order to attract buyers, the developers had to facilitate the immediate enjoyment of the property. This objective was accomplished by permitting and encouraging lot owners to use camper–trailers.

The developers' advertising emphasized the recreational use of Lake St. Clair. Reading the restriction in light of the need to accommodate trailers during the development's formative stage, it is difficult to read it as outlawing camper–trailers. This construction is supported by subsequent actions: the action of the trustees in allowing camper–trailers in the development in increasing numbers over the years, the construction and maintenance of sanitation facilities for trailers, and the grant of permits for electric hook–ups for trailers. All these factors substantiate the trial court's finding that the intent and purpose of the restriction was not to ban camper–trailers from the lots. The language of the restriction also lends support to the finding. The words used are "trailer or movable house" which could be interpreted to mean that a "trailer" is a movable house, that "movable house" modifies and explains "trailer."

Appellants' own testimony revealed that their intent was not to prevent camping overnight and the temporary use of camper–trailers, but only the permanent placement of camper–trailers on the lots. Even so, they would not apply the trailer restriction to those lot owners who had built residences and who also kept camper–trailers on their lots, although the terms of restriction make no distinction between temporary and permanent use of trailers nor between those who have built residences on their lots and those who have not.

■ When all of the surrounding circumstances are considered, it must be found that the trial court did not err as a matter of law in construing the terms of the restriction. There was substantial evidence

to support the trial court's finding and it was not against the weight of evidence. Therefore, appellants' second point is denied.

The word "trailer" is not defined in prior Missouri cases. Appellants rely on *County of Platte v. Chipman*, 512 S.W.2d 199 (Mo. App.1974) and *South Shore Homes Association v. Holland Holidays*, 219 Kan. 744, 549 P.2d 1035 (1976) to support their interpretation of the term. It is not separately defined in either case, however.

In *Chipman* the court determined that "mobile home" is equivalent in meaning to "auto trailer or movable house." Since the construction requirements of the zone would not permit auto trailers or movable houses, the applicants were enjoined from maintaining a mobile home park on the premises.

In *South Shore Homes*, the restrictive covenants were found to exclude defendant's "mobile campers and camping tents" from the premises and injunctive relief was granted. The covenant (or restriction) was broadly phrased to prohibit temporary or permanent occupation or use of a "mobile home, house trailer, basement, tent, or other outbuilding of a temporary character," so the court did not need to determine whether defendant's mobile campers were "trailers."

Furthermore, *Chipman* and *South Shore Homes* are decisions upholding the action of the respective trial courts. Thus, as in the present case, the appellate courts in *Chipman* and *South Shore Homes* gave due regard to the judgment of the trier of the case, and his special ability to determine the propriety of equitable relief.

In their third point, appellants claim that the trial court erred in finding that the camper–trailers did not violate paragraphs seven and nine of the restrictions. Paragraph seven requires all main dwellings to contain a minimum of 800 square feet under roof. Admittedly the camper–trailers contained less than 800 square feet. Paragraph nine prohibits residences from being wholly or partially covered with metal slabs or canvas. Admittedly, the camper–trailers

were covered with metal or canvas. Appellants also claim the respondents failed to obtain prior trustee approval before placing the trailers on the lots.

The 800 square foot requirement must be read in light of the entire paragraph in which it appears. " 'It is a familiar rule in the construction of terms to apply to them the meaning naturally attaching to them from their context.' . . . 1 Fed.Stat.Ann. (2d Ed.) of Statutes and Statutory Construction, 115." *Cochran v. Standard Accident Insurance Co.*, 219 Mo. App. 322, 271 S.W. 1011, 1013 (1925). Therefore, the purpose of the 800 square foot requirement is understood by a complete reading of paragraph seven. The paragraph relates to dwellings built on the premises. The 800 square foot restriction specifically relates to main dwellings. "Main dwellings" is modified by such words as "roof," "porch" and "basement." The restriction relates to a house to be built on the lot. It does not pertain to a trailer hauled onto a lot and not permanently affixed.

"Dwelling" is the topic of paragraph seven. "The word 'dwelling' is one of multiple meanings, but the particular meaning intended to be expressed by it when used in a given instance may be rendered obvious by the context. . . ." *Sanders v. Dixon*, 114 Mo.App. 229, 89 S.W. 577, 582 (1905). The sense varies according to the contextual language and facts of the case. *Sanders, supra*, 583. The context in which "dwelling" is used in paragraph seven reveals that the restrictions appearing in that paragraph relate to the construction of houses on the lots. The conclusion reached by a federal court, hearing a Missouri case, is equally applicable here. "It is obvious to us that the word 'dwelling' was used . . . not as referring to the *use* of the premises as a dwelling *house*, but rather as the type of construction of the building." [Emphasis in original]. *Kellick v. Wyrick*, 427 F.Supp. 710, 715 (E.D.Mo.1977). The restrictions appearing in paragraph seven do not apply to all structures used for shelter but rather to houses constructed on the premises. Ac-

cordingly, appellants' attempt to apply the 800 square foot restriction to respondents' trailers is without merit.

 Appellants seek to invoke the paragraph nine provisions relating to trustee approval and the prohibition against metal or canvas coverings to find a violation by respondents. The sentence referring to approval reads, "[C]omplete plans ... must be submitted for the written approval ... before *building operations* are started." [Emphasis added]. Obviously, the approval requirement relates to structures built on the premises and has no meaning for trailers.

 The restriction on the use of metal slabs or canvas in paragraph nine reads: "No residence shall be wholly or partially covered with tar paper, metal slabs or canvas, ...." The prohibition against metal or canvas siding modifies residences to be built on the premises after plans and specifications are approved. Thus, the provisions of paragraph nine offer no basis to compel the removal of the trailers and this point is ruled against appellants.

Appellants make much of the residential nature of the development. But the trial court's first finding of fact states that Lake St. Clair is a residential–recreational development. Appellants have not attacked this finding and the record supports this conclusion. Therefore, it is important that lot owners be able to enjoy the recreational features even if they do not have permanent homes on the premises. This need is met by the use of camper–trailers. Nothing in the covenant of restrictions precludes this practice.

There is reasonable and substantial doubt as to the meaning of the restriction which must be resolved in favor of the free use of the land. *Pellegrini v. Fournie*, 501 S.W.2d 564, 565[3] (Mo.App.1973).

It is not necessary to discuss the equitable defenses asserted by the respondents because of the ruling construing the language of the development restrictions as it applies to trailers.

The judgment is affirmed.

STEWART, P. J., and WEIER, J., concur.