Kenneth F. BLACKBURN and Violet Blackburn, Plaintiffs–Respondents,

v.

Marvin RICHARDSON and Doris Richardson, Defendants–Appellants.

No. 18051.

Missouri Court of Appeals, Southern District, Division Two.

March 11, 1993.

Robert S. Wiley, Crane, for defendants-appellants.

Lynn E. Heitman, Springfield, for plaintiffs-respondents.

GARRISON, Judge.

This appeal is from a judgment permanently enjoining appellants (defendants) from building on a portion of their land so as to block plaintiffs' view of Table Rock Lake.

The land in question overlooks Table Rock Lake and is part of a larger tract which has been divided into twenty "lots." [1] Defendants' tract (Lot 19) consists of approximately 3.6 acres, slopes sharply to the east in the direction of Table Rock Lake, and lies between the lake and plaintiffs' tract (Lot 20). Lot 20 sits on higher ground than does Lot 19 which adjoins it on the east. The remaining "lots" in Eagle Ridge lie in a double row generally to the south and west of the lots in question and are divided by a road so that there is one row of lots generally east of the road which are between Table Rock Lake and those lots west of the road which generally sit on higher ground.

Defendants were the first to purchase a "lot" in Eagle Ridge and therefore had their choice of tracts. They were looking for a lot with a lake view and, in making their selection, decided they wanted a "lot" on the lower side because they did not want a house built between them and the lake. The deed conveying Lot 19 to defendants included the words "subject to all easements, reservations, and restrictions now of record, if any." The restrictions, which defendants had been shown and which were then of record, included the following provision:

No building or structure shall be erected so as to substantially obstruct the view of any other building or structure.

Shortly after defendants purchased the lot they, with the help of a builder, selected what they thought was the ideal building spot on their tract. This area was not then staked or otherwise made apparent to a person looking at the property.

Plaintiffs purchased Lot 20 about seven months later, after having spent two years looking for either a home or building site with this kind of lake view. They were aware that the lot to the east and below their lot had been sold, although they did not know to whom. They testified that, while they relied on the restrictive covenant in question in buying Lot 20, they did not expect that the view from their property would be totally unobstructed by the residence which they assumed would be constructed on the adjoining lot.

The same builder who had earlier assisted defendants in selecting their ideal building spot built a home for plaintiffs on their lot. Apparently, however, plaintiffs were not told where defendants intended to build prior to completion of their home in May 1990. Their son, an architect, designed their home with the view of the lake being the primary objective. Plaintiffs' lot is approximately one mile west and 400 feet above Table Rock Lake and provides a panoramic view of the lake as well as Table Rock Dam, which is approximately six and one-quarter miles away.

It is unclear whether defendants learned of plaintiffs' proposed building site before construction actually began. Although he did not perform any services for them, at some point plaintiffs' son met with defendants to discuss his professional qualifications and the possibility of designing their home. There is a conflict in the testimony concerning what was produced or discussed at that meeting about the location where plaintiffs' home was to be built. Plaintiffs' son testified that he left a copy of plaintiffs' site plan with defendants which showed the location of the proposed home on Lot 20. Defendants' evidence, on the other hand, was that plaintiffs' son merely told them plaintiffs' home would be located about 80 feet from the property line. One defendant (Mrs. Richardson) testified that

---

1. The area is known as Eagle Ridge Subdivision but was not formally subdivided or platted. It has been conveyed by metes and bounds descriptions but, apparently for identification purposes, the plots were referred to by lot numbers.

the son showed them approximately where plaintiffs' home would be on a plat. Nothing was told to plaintiffs or their son at that time about the intended location of defendants' home. The evidence was that plaintiffs' home could have been built on another portion of Lot 20 if they had known of defendants' proposed building site.

According to the evidence, the first indication plaintiffs had of defendants' intended building site came from a conversation between the parties in July 1990 after plaintiffs moved into their completed home. At that time defendants visited the site and showed plaintiffs where they intended to build. This was approximately the same location that had been selected shortly after defendants bought Lot 19. During that conversation one of the plaintiffs expressed the hope that defendants were not going to block their view of the lake. Plaintiffs' evidence was that Mrs. Richardson said, "That's the way it is," whereas defendants' evidence was that Mrs. Richardson either said nothing or replied, "Well."

Plaintiffs contend that defendants' home, if built where it is planned, will substantially obstruct the view from their home in violation of the restrictive covenant. They filed this suit when defendants' intended building site was staked in preparation for construction. The trial court, after entering a preliminary injunction, issued its Findings of Fact and Conclusions of Law and entered the following judgment:

It is therefore ordered, adjudged and decreed that the Defendants shall be and hereby are permanently enjoined from constructing a house or other building or structure on Defendants' property south of a line extending generally east from the center of the east side of Plaintiffs' house to the lower end of an existing retaining wall adjacent to the north side of Plaintiffs' driveway, as depicted in Plaintiffs' exhibit Q–12 and Defendants' exhibit 12–A, and continuing in a straight line extending across Defendants' property at such a height as to block the view of Table Rock Lake as seen from the center of the deck on the upper level of Plaintiffs' home.

In this appeal, defendants raise the following points, listed here in the order of their presentment: (1) plaintiffs failed to prove that the view from their home would be substantially obstructed within the meaning and intent of the restrictive covenant; (2) since the view protected by the restrictive covenant was the total view of the countryside, dam and lake, the judgment prohibiting blockage of any portion of Table Rock Lake was overly broad; (3) plaintiffs' claims should be barred by laches and the "clean hands doctrine" because they unreasonably delayed seeking relief and themselves violated the restrictive covenants in question; (4) the court erred in admitting certain exhibits and allowing the testimony of one of the witnesses; and (5) the judgment is void because it is not sufficiently certain in its terms to permit enforcement without the need for external proof and further hearings.

None of the points raised on this appeal challenge the validity or enforceability of the restrictive covenant in question. In defendants' first point, the issue is whether the evidence established that the intended construction would substantially obstruct the view from plaintiffs' residence so as to violate the restrictive covenant in question. The issue, as framed, is the meaning and intent of the covenant and whether the evidence was sufficient to show a violation.

 Rules concerning the construction of restrictive covenants are well established in Missouri. Restrictive covenants are not favorites of the law and are to be strictly construed. *Schneider v. Forsythe Group, Inc.,* 782 S.W.2d 139, 143 (Mo.App. 1989); *Paddock Forest Residence Ass'n v. Ladue Serv. Corp.,* 613 S.W.2d 474, 477 (Mo.App.1981); *Phillips v. Schwartz,* 607 S.W.2d 203, 207 (Mo.App.1980). If the restrictive covenant is unambiguous, it is not open to judicial construction, *Dierberg v. Wills,* 700 S.W.2d 461, 468 (Mo.App.1985), and it is improper to inquire into the surrounding circumstances, *Paddock Forest Residence Ass'n v. Ladue Serv. Corp.,* 613 S.W.2d at 477. Where possible, the courts should give effect to the intent of the par-

ties as expressed in the plain language of the covenant. *Blevins v. Barry–Lawrence County Ass'n for Retarded Citizens,* 707 S.W.2d 407, 408 (Mo. banc 1986). In doing so, the terms should be given their plain, ordinary and usual meaning. *Simcox v. Obertz,* 791 S.W.2d 440, 442 (Mo.App.1990); *Lake Saint Louis Community Ass'n v. Ravenwood Properties, Ltd.,* 746 S.W.2d 642, 644 (Mo.App.1988). Where, however, the meaning of the restriction is in doubt, it is proper to consider the intention of the parties, *Berkley v. Conway Partnership,* 708 S.W.2d 225, 227 (Mo.App.1986), which includes an inquiry into the purpose which the parties sought to accomplish by the restrictive covenant, *Phillips v. Schwartz,* 607 S.W.2d at 207; *Hanna v. Nowell,* 330 S.W.2d 595, 599 (Mo.App.1959). In doing so, it is proper to consider the situation of the parties, together with the accompanying circumstances at the time of the covenant. *Phillips v. Schwartz,* 607 S.W.2d at 207; *Weber v. Les Petite Academies,* 548 S.W.2d 847, 851 (Mo.App.1976). If there is a substantial doubt as to the meaning of the covenant, the doubt should be resolved in favor of the free or less restrictive use of the property. *Steve Vogli & Co. v. Lane,* 405 S.W.2d 885, 889 (Mo.1966); *Lake Saint Louis Community Ass'n v. Ravenwood Properties, Ltd.,* 746 S.W.2d at 644; *Phillips v. Schwartz,* 607 S.W.2d at 207; *Buoncristiani v. Randall,* 526 S.W.2d 68, 72 (Mo.App.1975).

■ At trial there was considerable dispute about what was meant or intended by the use of the word "view" in the restrictive covenant. Plaintiffs argued it meant primarily the lake, while defendants contended it meant the whole countryside. One of the developers testified as follows:

Q. Now, in—As the developer here, what was the purpose of this particular restriction that I have—

A. We was trying to put a restriction in there just for having somebody to completely block the view of the people on the right hand side of the road, that's on the upper side of the road of the lots.

Q. Now when you refer to the view, what are you referring to in those restrictions?

A. Well, I'm referring to the lake and the countryside, the dam. We all look at the dam and just more or less the whole view.

Contrary to the interpretation placed on this testimony by defendants, we do not interpret it as indicating that the "view" sought to be protected had a primary focus on anything other than the lake. Even if it did, the developer's testimony would not be binding as a matter of law. *Blevins v. Barry–Lawrence County Ass'n for Retarded Citizens,* 707 S.W.2d at 408. Testimony concerning the meaning or intent of the restrictive covenant can also come from the property owners. *Phillips v. Schwartz,* 607 S.W.2d at 207; *Feely v. Birenbaum,* 554 S.W.2d 432, 436 (Mo.App. 1977). In this case, the testimony of both plaintiffs and defendants makes it clear that the most significant portion of the "view" was that involving the lake. Both sets of parties selected this property based in large measure on the view it provided of Table Rock Lake. There was testimony of at least one alternative building site available to defendants which was located north of the proposed site and which would move them out of a direct line between plaintiffs' home and the lake. One of defendants' objections to that site was that the lake view would not be as good.

■ The trial court found, after hearing the evidence and observing the witnesses, that "there is no serious contention that the view being protected is anything other than Table Rock Lake and the adjacent hills and hollows which have attracted the parties, and thousands more like them, to plan their retirement homes in Stone County." We give deference to the findings of the trial court based upon its opportunity to hear the evidence and observe the witnesses. *Phillips v. Schwartz,* 607 S.W.2d at 206. This, together with our review of the photographic exhibits, leads us to conclude that the primary thrust of the "view" sought to be protected was that of the lake.

The question then becomes whether the intended construction would violate the restrictive covenant by "substantially" blocking the view of the lake from plaintiffs' home. The term "substantial" is defined in Webster's Third New International Dictionary as: "being of moment: important, essential"; "considerable in amount ..."; "being that specified to a large degree or in the main"; and "of or relating to the main part of something." Its meaning, however, is not easily applied. As said in 83 C.J.S. *Substantial,* page 762:

> The word "substantial" is a relative, and not an exact, term. It has been said to be as illusive a word as the English language contains, and is of varied meaning, and is susceptible of different meanings according to the circumstances of its use, and in considering the word it must be examined in its relation to the context, and its meaning is to be gauged by all the circumstances surrounding the transaction with respect to which it has been used.

■ The trial court found that the intended construction will "substantially" obstruct the view from plaintiffs' home within the meaning and intent of the restrictive covenant. We agree. The photographic evidence demonstrates that a major and significant portion of plaintiffs' view of the lake will be blocked by the intended construction. The view from the back of plaintiffs' home shows a wide expanse of Table Rock Lake with the closest and perhaps most prominent part being a large cove which disappears below the horizon provided by defendants' lot. The extent of this obstruction is graphically demonstrated by reference to a board nailed to a tree on defendants' lot which represents the approximate height of the intended roof line. Essentially the only view of the lake which will remain intact from plaintiffs' home would be a small sliver of the lake above defendants' roof line, a portion of the lake to the southeast from plaintiffs' home, and perhaps a view of Table Rock Dam which, the evidence indicates, is approximately six and one-half miles away and is not visible on hazy days.

■ The facts and circumstances here support injunctive relief. For instance, defendants apparently did nothing to put plaintiffs on notice of their intended building site, even when they knew construction was being planned on Lot 20. We also agree with the trial court when it said in its Findings of Fact and Conclusions of Law, "It should have been apparent from the comparative topography of Lots 20 (upper) and 19 (lower) that Lot 19 was the 'burdened' property in so far as view preservation is concerned."

The restrictive covenant does not entitle plaintiffs, however, to prevent all interference with their view. It prohibits structures which "substantially obstruct the view" but does not prevent obstruction which may not rise to the level of "substantial." A corollary can be found in *St. Louis Union Trust Co. v. Tipton Electric Co.,* 636 S.W.2d 357, 359 (Mo.App.1982), where the court considered a restrictive covenant in a lease prohibiting certain "principal" uses of the property. It held that the covenant merely prohibited the "principal use of the premises as an appliance store" but did not "totally prohibit the sale of appliances."

■ The trial court here, in its preliminary injunction, prohibited defendants from constructing a house "at the currently planned location which was described in the evidence and which has heretofore been staked out." The permanent injunction complained of here, however, went further. As we interpret that judgment, the trial court is prohibiting construction on portions of defendants' lot "at such a height as to block the view of Table Rock Lake as seen from the center of the deck on the upper level of Plaintiffs' home." This creates a greater restriction in the use of defendants' property than is authorized under the restrictive covenant in question.

■ Such a covenant should never be applied in a manner that would defeat the plain and obvious purpose and intent of the restriction. *Lake Saint Louis Community Ass'n v. Ravenwood Properties, Ltd.,* 746 S.W.2d at 644. The terms used should not be construed in the broadest sense pos-

sible to include meanings which would not be applied by most people. *Feely v. Birenbaum,* 554 S.W.2d at 435. Likewise, such covenants should not be extended by implication to include something that is not clearly expressed in them. *Lake Saint Louis Community Ass'n v. Ravenwood Properties, Ltd.,* 746 S.W.2d at 644; *Dierberg v. Wills,* 700 S.W.2d at 468; *Buoncristiani v. Randall,* 526 S.W.2d at 72; *Pellegrini v. Fournie,* 501 S.W.2d 564, 565 (Mo.App.1973).

Here, the prohibition against construction which would effectively block any view of Table Rock Lake exceeded the intent and purpose of the restrictive covenant. The developer's purpose was to prevent structures which would "completely block the view" of the people on the upper lots. There was testimony from plaintiffs that they assumed a house would be built on the adjoining lot, they expected that it would be between them and "some portion of the lake," they did not expect that a house would be built which created no obstruction to view whatsoever, and they were not asking defendants to build a home completely out of their view, but rather were "asking them to share the view of the lake with us." Our review of the photographic evidence indicates defendants' home could be located so as to share the view of the lake and still not obstruct the view from plaintiffs' home in a substantial way.

In our review of the trial court's judgment, we are required to sustain it unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). There is no evidence here that the restrictive covenant was intended or expected to insure a totally unobstructed, pristine view of the lake. That result would be contrary to the plain wording of the covenant itself, as well as the intent and expectation of the developer and the parties. In this respect, the judgment is without substantial evidence to support it, erroneously applies the law, and must be reversed. We also remand this case for a

determination of (1) what construction on Lot 19 would create a substantial obstruction to plaintiffs' view, and (2) what should be enjoined, considering our holding in this opinion. In doing so, the trial court should determine whether additional evidence is necessary on that issue.

Defendants raise the defenses of laches and the "clean hands doctrine," and argue that they bar plaintiffs from seeking equitable relief. We will discuss each of these theories individually.

In support of the theory of laches, defendants argue that plaintiffs delayed filing suit for over a year after knowing of defendants' building plans and after defendants made substantial changes in their circumstances. They argue that plaintiffs knew of their proposed building site in July 1990 when they pointed it out to them. At that time, plaintiffs expressed concern that their view would be blocked. Defendants argue that plaintiffs took no legal action until this suit was filed on September 4, 1991. By that time, Mr. Richardson had retired on May 31, 1991 (although Mrs. Richardson was still employed), defendants had closed the sale of their home on August 31, and they were apparently living in rented quarters.

"Invocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." *Lyman v. Walls,* 660 S.W.2d 759, 761 (Mo. App.1983). In order for delay to support the doctrine of laches, it must be unreasonable and unexplained and must be shown to have caused disadvantage and prejudice to the defendant, but does not apply where "no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed." *Metropolitan St. Louis Sewer District v. Zykan,* 495 S.W.2d 643, 657 (Mo.1973). In considering the doctrine, the court should give regard to the equities and conduct of all the parties. *Stenger v. Great Southern Savings and Loan Ass'n,* 677 S.W.2d 376, 383 (Mo. App.1984). Laches is not a favored doctrine and equity does not encourage its

invocation to defeat justice, but only to prevent injustice. *Higgins v. McElwee*, 680 S.W.2d 335, 341 (Mo.App.1984).

Here, the delay in filing suit was not unreasonable or excessive under the circumstances. Defendants had known since 1988 where they intended to build their home. Plaintiffs, on the other hand, did not have that information until July 1990, after they had moved into their new home. At that time, plaintiffs immediately voiced concern about blockage of the view. They later sent letters which apparently also expressed concern and attempted to resolve the situation. The testimony was that defendants' contractor staked the intended construction in September 1991. Obviously, suit was filed very shortly because the legal file indicates it was filed on September 4, 1991. In *Lake Development Enterprises, Inc. v. Kojetinsky*, 410 S.W.2d 361, 368 (Mo.App.1966), the court held that defendants had no reason to believe plaintiff had changed its earlier expressed opposition to an intended building. The same applies here. There is no showing that defendants had any basis to believe that plaintiffs had changed their objection to the intended site or would not seek to enforce the restrictive covenant if they persisted. In reviewing a claim of laches, all the evidence and circumstances adduced at trial should be considered. *Grieshaber v. Grieshaber*, 793 S.W.2d 161, 163 (Mo.App.1990). Under the circumstances here, we are unable to conclude that plaintiffs' claim should be barred by laches.

Defendants also argue that the "clean hands doctrine" should be invoked to preclude plaintiffs' claim. In support, they argue that plaintiffs violated a restrictive covenant which required that any outbuildings be "compatible in design and appearance with the residence"; that they be "located to the rear of the front building line of any residence"; and that "no metal buildings of any sort shall be permitted." In support, defendants argue that plaintiffs placed an outbuilding on the front of their property which consisted of gray wood while the residence was brick, and also constructed a metal doghouse with chain link pen which was within three or four feet of defendants' property line.

It was said in *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 229 (Mo.App. 1980), "... the hoary and murky doctrine that 'one who seeks equity must come in with clean hands' applies only to a party who shows he was injured by the asserted inequitable conduct." Here, Mr. Richardson testified that when he bought the lot he expected "there would be woodpiles, doghouses, whatever" and both defendants testified they were not asking that plaintiffs be required to move anything. Plaintiffs testified that they originally planned to put the outbuilding at the rear of their property but moved it to the front to keep it out of view of defendants; the location of the outbuilding was approved by one of the developers who was also president of the homeowners association; and that, in any event, they were willing, upon request, to move it to the rear of the property. As to the dog pen, even now defendants are not asking that it be moved or complaining that it will be injurious to them in any way. This is somewhat like the case of *Simcox v. Obertz*, 791 S.W.2d at 443, where the court held that plaintiffs' prior violations of restrictive covenants did not require the application of the "unclean hands doctrine" so as to bar suit to enjoin a subsequent violation by defendants.

Defendants also contend that the "unclean hands doctrine" applies because one of the plaintiffs (Mr. Blackburn), without defendants' permission, trimmed some lower limbs from two small trees on defendants' lot and nailed a small board to one of them. They also complain that plaintiffs stacked firewood on their lot. Plaintiffs admitted these actions, contending that the limbs were infested with worms and that the board was placed on the tree at the approximate height of the roof of defendants' intended house in order to provide a point of reference to demonstrate the extent the structure would block the lake view. The firewood was placed partially on defendants' lot by the delivery person when plaintiffs were not home but was later

moved by them. While we do not condone a trespass, we do not believe the circumstances here rise to the level requiring application of the "unclean hands doctrine."

■ Since the trial court, in its Findings of Fact and Conclusions of Law, made no findings concerning these defenses, we assume that the facts were found in accordance with the result reached. *Lyman v. Walls*, 660 S.W.2d at 761. We also conclude that the doctrines of laches and "unclean hands" do not, under the facts and circumstances here, bar plaintiffs' suit.

Another of defendants' points on this appeal deals with the admissibility of evidence. Even though this case is being reversed for another reason, we discuss this point because it is being remanded for further consideration by the trial court.

In particular, defendants complain of the admission of plaintiffs' Exhibits K, O, S and T. Exhibit K was a photograph from the back of plaintiffs' home showing the view of the lake with a cardboard overlay attached demonstrating the anticipated blockage of view; Exhibit O was a site plan for plaintiffs' home with an attached overlay to show the location of defendants' expected home as indicated by the building stakes; Exhibit S was a topographical map of a portion of Table Rock Lake used to demonstrate the extent defendants' home would obstruct the view of the lake area; and Exhibit T was a visual rendering prepared by a professional engineer locating defendants' proposed residence by reference to the building stakes and also demonstrating an alternative building site on defendants' property.

■ We do not agree with defendants that the exhibits were improperly admitted or shown to have been prejudicial. In some instances, they were admitted over a general objection of lack of foundation. As indicated in *Pazdernik v. Decker*, 652 S.W.2d 319, 321 (Mo.App.1983), such objections are insufficient. Additionally, some of these exhibits were merely cumulative of others which were admitted without objection. For instance, several photographs were admitted demonstrating the top of defendants' expected roof line by reference to a board nailed on a tree, and also demonstrating the anticipated location of defendants' expected home based upon the building stakes. Thus, there was ample evidence, other than the exhibits complained of here, from which the court could determine the extent the view of the lake would be blocked by defendants' home.

■ Exhibit T was referred to in the testimony as a "survey." Defendants objected that the professional engineer who prepared and identified the exhibit was not qualified to make a "survey," and that, in any event, it was not demonstrated that it commenced at a point as required by statute. While the document was referred to as a "survey," it was apparent that it did not purport to describe or locate land boundaries. The court observed that it was more in the nature of an "engineering site study" and was for the purpose of showing relative elevations from various points on defendants' property in comparison to plaintiffs' property. Maps, drawings, and diagrams which illustrate scenes and the relative location of objects are admissible if shown to be reasonably accurate and correct so as to permit the fact finder to understand the facts. *State ex rel. State Highway Comm'n v. DeLisle*, 425 S.W.2d 938, 940 (Mo.1968).

■ In reviewing the admissibility of evidence in a court-tried case, we are mindful that the trial court is allowed wide latitude in the admission of evidence because it is presumed that it will not give weight to that evidence which is incompetent. *Spielberg Mfg. Co. v. Direct Sales International, Inc.*, 566 S.W.2d 839, 840 (Mo.App.1978). Because of this, it is difficult to base reversible error on the erroneous admission of evidence in a court-tried case. *Gardner v. Robinson*, 759 S.W.2d 867, 868 (Mo.App.1988). Even if evidence is improperly admitted, it is harmless error if there is other competent evidence which supports the judgment. *Jetz Serv. Co., Inc. v. Chamberlain*, 812 S.W.2d 946, 950 (Mo.App.1991); *Gardner v. Robinson*, 759 S.W.2d at 868; *Pelligreen v. Century Fur-*

*niture & Appliance Co.,* 524 S.W.2d 168, 170 (Mo.App.1975). In *In re Marriage of Clark,* 801 S.W.2d 496, 498–499 (Mo.App. 1990), the court said:

> The admission of improper evidence is not ordinarily a ground for reversal in a non-jury case. *Gardner v. Robinson,* 759 S.W.2d 867, 868 (Mo.App.1988). In a court-tried case a certain latitude is allowed in the admission of evidence. Except where a trial court relies on inadmissible evidence in arriving at its findings, such evidence is ordinarily held to be nonprejudicial.

■ Defendants also allege error in admitting the testimony of witness Richard Bogardus. In particular, they complain that he was permitted to testify about his understanding of the meaning of the restrictive covenant in question, contending that his testimony was prejudicial in that it invaded the province of the court and constituted an opinion or legal conclusion on the ultimate issue. His testimony, however, was cumulative of the testimony of the developer referred to earlier in this opinion. A trial court will not be convicted of error in the admission of evidence which is merely cumulative and does not appear to have played a critical role in the court's decision. *Gardner v. Robinson,* 759 S.W.2d at 868.

In this case, there is no indication that the trial court relied on the evidence complained of to the exclusion of other testimony and exhibits which were properly admitted, and thus no prejudice is found which would require reversal of this case on that basis.

■ Finally, in defendants' final point, they contend that the judgment is void because it does not clearly describe, without reference to other documents, the acts and things enjoined and does not permit enforceability without the need for external proof and further hearings. We agree with defendants that the judgment is unduly vague and would require resort to external proof for enforcement. We would not ordinarily discuss this point inasmuch as we have already determined that the case must be reversed. However, because this case is being remanded for further proceedings, and in an effort to expedite this litigation, we feel compelled to observe that Rule 92.02(d)[2] provides:

> *Form and Scope of Injunction or Temporary Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained; ...

While the trial court is vested with broad discretionary power to shape the relief it grants, considering the particular facts, circumstances and equities of the case, it must nevertheless comply with Rule 92.02(d). "An injunction must clearly and specifically describe the acts and things enjoined so as not to be subject to misunderstanding and confusion by those against whom it is directed." *Farmer's Mut. Fire Ins. Co. v. Farmer,* 795 S.W.2d 104, 109 (Mo.App.1990). An essential requirement is that the judgment be sufficiently certain so that it permits issuing and processing of executions or other court orders without the need for external proof and another hearing. *Four Seasons Lakesites v. Dungan,* 781 S.W.2d 269, 271 (Mo.App.1989).

■ Here, the judgment refers to a line extending from the center of the back of plaintiffs' house to the "lower end of an existing retaining wall adjacent to the north side of Plaintiffs' driveway, as depicted in Plaintiffs' exhibit Q–12 and Defendants' exhibit 12–A" and further prohibits construction of a house or other structure within the area attempted to be described, "at such a height as to block the view of Table Rock Lake as seen from the center of the deck on the upper level of Plaintiffs' home."

The judgment not only requires reference to photographic exhibits, but the exhibits themselves could create confusion about which portion of the retaining wall is referred to. Likewise, the judgment is uncertain and vague about the permissible

---

**2.** Rule references are to Missouri Rules of Civil Procedure (1992).

height of a structure which would be permitted on the portion of the property attempted to be described.

For the above and foregoing reasons, the judgment is reversed and remanded for further proceedings consistent with this opinion.

FLANIGAN and PREWITT, JJ., concur.